Filed 9/23/20  P. v. Amaya CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

### DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

VITAN AMAYA,

      Defendant and Appellant.

E071492

(Super.Ct.No. FSB1405590)

OPINION

APPEAL from the Superior Court of San Bernardino County.  David J. Mazurek, Judge.  Affirmed.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sedival and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

The primary issue in this appeal is whether a sentence of more than 50 years to life on two counts of unlawful sexual intercourse with a minor 10 years or younger

1

constitutes cruel and unusual punishment. We conclude it does not. Although the defendant had no significant criminal history and, in his words, the crimes "did not involve violence or threats of violence," this case is not one of those "'exceedingly rare' and 'extreme'" cases where the sentence is grossly disproportionate to the crime (*Lockyer v. Andrade* (2003) 538 U.S. 63, 73) or one where the punishment "shocks the conscience and offends fundamental notions of human dignity" (*In re Lynch* (1972) 8 Cal.3d 410, 424). We therefore reject defendant's claim that his sentence was unconstitutionally cruel and unusual. We also reject defendant's challenge to the trial court's exercise of sentencing discretion and claim of error under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant and appellant Vitan Amaya began dating victim Jane Doe's mother when Doe was a baby. During the approximately nine-year relationship, Amaya lived with the family and helped raise Doe and her older brother. Doe sometimes referred to Amaya as "Dad."

When Doe was nine years old, Amaya began molesting her. One night, while Doe was asleep on the living room sofa, Amaya lay on top of her and put his penis into Doe's vagina. Although Doe tried to push Amaya away, he held her arms down.

Amaya also molested Doe on her 10th birthday as well as the following months. Later that year, Doe began vomiting, and doctors eventually determined that Doe was pregnant. Doe obtained a medically necessary abortion four days after the pregnancy was

2

discovered. Later DNA tests showed that it was 469,000 times more likely he was the father than a random individual.

In an interview with police, Amaya stated that he loved Doe as his own daughter. Amaya admitted having sexual intercourse with Doe, but insisted that it only occurred once and that Doe initiated the encounter.

Amaya was charged with two counts of unlawful sexual intercourse with a child 10 years or younger (Pen. Code, § 288.7, subd. (a); all undesignated statutory references are to the Penal Code), with count 1 referring to the time Doe was nine years old and count 2 referring to the time Doe was 10 years old. Count 2 also alleged that Amaya personally inflicted great bodily injury (i.e., the pregnancy) upon Doe in the commission of the offense (§ 12022.7, subd. (a)).

A jury found Amaya guilty on all counts. The trial court sentenced Amaya to a term of 53 years to life, consisting of two consecutive terms of 25 to life on counts 1 and 2 plus three years for the great bodily injury enhancement with 1,604 days' credit for presentence custody and conduct. At sentencing, the trial court made the following remarks:

"The sexual intercourse with a ten-year old would have lasting impacts in and of itself. You could see the effect it had on the victim when she came to testify. The psychological impacts of that will be with her and affect her for the rest of her life, and that's just for the act of the sexual intercourse. The fact that he impregnated her makes this so much worse.

3

"There will come a time when the victim will have the understanding and the cognitive ability to comprehend that she had to terminate a pregnancy, and that will have significant psychological impact on her. It may impact her in the future in raising kids and being in relationships. And furthermore, the defendant is responsible for having to have a life terminated because he, in fact, got the victim pregnant and the pregnancy had to be terminated for health reasons for the mother, but it doesn't mean there was a life that had to be terminated because of the defendant's actions. So it's more than just sexual intercourse with a minor that was ten. It's sexual intercourse that resulted in pregnancy that resulted in a life having to be terminated.

"So for all those reasons, the Court thinks the statutorily prescribed sentence is appropriate and I would not exercise whatever discretion I may have to do anything different."

The trial court ordered Amaya to pay a $3,000 restitution fine (§ 1202.4, subd. (b)), reduced from $10,000, the amount the prosecution requested. The trial court also ordered Amaya to pay $140 in court operations assessments and court facilities fees (§ 1465.8; Gov. Code, § 70373).[1]

---

[1] At sentencing, the trial court stated that it would "order the $70 CSC fee per convicted count," but both parties interpret this to refer to the court operations assessment under section 1465.8 and the court facilities fee under Government Code section 70373, and we do as well. In any event, the court operations assessment and court facilities fee are mandatory in that they "shall be imposed on every conviction for a criminal offense" subject to exceptions not applicable here. Given this, the abstract of judgment is erroneous in that it only imposes one $70 fee under section 1465.8.

## II. DISCUSSION

### A. *Cruel and Unusual Punishment*

Amaya first contends that his sentence of 53 years to life constitutes cruel and unusual punishment under the United States and California Constitutions, given that he was already 51 years old at the time of sentencing, had no prior felony convictions, and did not use overt force or threats of violence in committing the crimes. We disagree.

The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." (U.S. Const., 8th Amend.) "The concept of proportionality is central to the Eighth Amendment," and cases addressing it "underscore the essential principle that, under the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes." (*Graham v. Florida* (2010) 560 U.S. 48, 59 (*Graham*).) Similarly, the California Constitution provides: "Cruel or unusual punishment may not be inflicted or excessive fines imposed." (Cal. Const., art. I, § 17.)

Although the parties present the issue as requiring separate analyses under the United States versus the California Constitutions, the framework is by and large the same. Under the Eighth Amendment, "challenges to the length of term-of-years sentences" are reviewed by first "comparing the gravity of the offense and the severity of the sentence." (*Graham*, *supra*, 560 U.S. at pp. 59-60, discussing *Harmelin v. Michigan* (1991) 501 U.S. 957.) "'[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's

5

sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation.] If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." (*Id.* at p. 60.)

Similarly, "[u]nder the California Constitution, we use a three-pronged test to determine whether a particular sentence is disproportionate to the offense for which it is imposed. First, we examine 'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.' (*In re Lynch* (1972) 8 Cal.3d 410, 425 [105 Cal.Rptr. 217, 503 P.2d 921] [(*Lynch*)].) Second, we compare the punishment imposed with punishments prescribed by California law for more serious offenses. (*Id.* at pp. 426-427.) Third, we compare the punishment imposed with punishments prescribed by other jurisdictions for the same offense. (*Id.* at pp. 427-429.)" (*People v. Em* (2009) 171 Cal.App.4th 964, 972; see also *People v. Garcia* (2017) 7 Cal.App.5th 941, 952 [describing the "three analytical techniques" under *Lynch*].) A lengthy sentence is cruel and unusual under the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Lynch*, *supra*, at p. 424.)

6

Thus, under both the federal and the state frameworks, we consider the gravity or nature of the offense and engage in a comparative analysis. The two differ in that, under the federal inquiry, we proceed to the comparative analysis only if the "'threshold'" analysis concerning the gravity of the offense "'leads to an inference of gross disproportionality'" (*Graham*, *supra*, 560 U.S. at p. 60), whereas the state inquiry always involves the comparative analysis.

Here, although the sentence is severe, so too is the gravity of the offense. Amaya sexually molested and impregnated a 10-year old child, his step-daughter who referred to him as "Dad," causing her to have an abortion. Even someone without a criminal history who commits such actions is a grave danger to society. (See *People v. Gonzales* (2001) 87 Cal.App.4th 1, 17 ["The lack of a significant prior criminal record is not determinative in a cruel and unusual punishment analysis."].) The comparison between the crime and the sentence does not "'lead[] to an inference of gross disproportionality'" (*Graham*, *supra*, 560 U.S. at p. 60), so the federal claim fails at this threshold stage.

A comparative analysis does not help Amaya, either. Although a sentence for violating section 288.7, subdivision (a) is greater than those imposed for first degree robbery, forcible rape, or forcible sodomy, "[i]t is well within the prerogative of the Legislature to determine that sex offenses against young children are deserving of longer sentences than sex offenses against adults or nonsex offenses." (*People v. Gomez* (2018) 30 Cal.App.5th 493, 502.) Amaya compares California law to sentence ranges for similar crimes from 10 other states, many of which have a minimum sentence of less than 25

years, but three of which (Kansas, Nevada, and Florida) have equal or greater minimum sentences. Even if we were to assume for the sake of argument that this makes California "among the most extreme in the nation"—it does not—the California Constitution "does not require California to march in lockstep with other states in fashioning a penal code. It does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.'" (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.) At bottom, Amaya's sentence does not "shock[] the conscience" or "offend[] fundamental notions of human dignity." (*Lynch*, *supra*, 8 Cal.3d at p. 424.) His contention that he has been subjected to cruel and unusual punishment is without merit.

B. *Sentencing Discretion*

Amaya next contends that the trial court misunderstood the extent of its sentencing discretion (specifically, whether it had discretion to impose the two 25-year terms concurrently or consecutively), and that remand is necessary for the court to properly exercise such discretion.

Section 669 gives a trial court discretion to determine whether the terms of imprisonment for two or more convictions are to run concurrently or consecutively. (See § 669, subd. (a).) "The Legislature may remove this discretion for certain crimes, but exceptions are typically made clear in the statutory language of the offense." (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1025.) Here, Amaya contends that the trial court had discretion under section 669, and the People, not mentioning section 669 in their respondent's brief, have tacitly conceded the point.

Portions of the record suggest that the trial court believed that the two 25-year terms must run consecutively. For instance, at sentencing, Amaya's trial counsel requested that the counts be imposed concurrently, and the trial court stated its belief it had to be fully consecutive:

"[Counsel]: I would urge the Court, if it's possible—and I probably—I don't believe it is—but I would ask the Court to at least hold count—the sentence for Count 1 maybe concurrent to Count 2 so it would be 28 to life. I'm not sure if the Court can or if the Court has no discretion at all because it's gotta be fully consecutive.

"[Court]: I believe it has to be fully consecutive."

On the other hand, the trial court also noted that it would impose the counts consecutively because "[t]his does involve multiple acts at different times." (See Cal. Rules of Court, rule 4.425(a)(3) [whether or not the "crimes were committed at different times or separate places" is a factor to consider in determining whether to impose concurrent or consecutive sentences].)

Whether or not the trial court actually misunderstood the scope of its discretion here, however, remand is unnecessary. The court expressly stated that it would have imposed consecutive sentences even if it had discretion to do otherwise. "'[W]hen the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." "But if '"the record shows that the trial court would not have exercised its discretion even if it believed it

could do so, then remand would be an idle act and is not required."'" (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) At sentencing, after detailing the lasting effects Amaya's crimes would have on Doe's life, the trial court stated that, "for all those reasons, the Court thinks the statutorily prescribed sentence is appropriate and I would not exercise whatever discretion I may have to do anything different." Because the trial court clearly stated it would not exercise *whatever* discretion it had, Amaya's contention that the trial court's remarks here were only made in rejecting a claim of cruel and unusual punishment is unfounded. The record contains a clear indication that the trial court would not exercise its discretion to impose the two 25-year sentences concurrently, so no remand is necessary.

C. Dueñas *Error*

While this case was pending, another district of this Court of Appeal decided *Dueñas*, *supra*, 30 Cal.App.5th 1157, which held that a trial court must "conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before requiring a defendant to pay a restitution fine under section 1202.4 or assessments under section 1465.8 and Government Code section 70373. (*Id.* at p. 1164.) Amaya contends that the trial court improperly imposed a $3,000 restitution fine and $140 in fees under these statutes without first considering his ability to pay.

Here, the probation report requested that Amaya be ordered to pay $10,000 in restitution fines, the maximum amount allowable for felony convictions under section 1202.4, subdivision (b)(1). At sentencing, Amaya's trial counsel objected to the amount, characterizing it as "excessive" and noting that, "[w]ith 53 to life, he's never gonna be able to get out or pay that." The trial court ultimately reduced the restitution fine to $3,000.

Under these circumstances, it is perplexing that Amaya contends here the trial court committed *Dueñas* error regarding the restitution fine. Section 1202.4, subdivision (c) states that "[i]nability to pay may be considered" in increasing the restitution fine above the $300 minimum, trial counsel specifically noted Amaya's inability to pay, and the trial court ordered an amount lower than what the People requested. This all collectively indicates that the trial court did consider ability to pay, even if it did not say as much on the record. We therefore reject any contention that *Dueñas* error could have occurred here, at least to the restitution fine. While it is possible Amaya meant to contend that *Dueñas* error exists if the finding is not explicit, or that there is error simply because there was no separate *hearing* on ability to pay, he does not make these specific arguments with any citation to authority or significant discussion, so we consider such arguments waived. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

With regard to the remaining $140, Amaya was sentenced to 53 years to life with 1,604 days' credit for presentence custody and conduct. "Wages in prison range from

11

$12 to $56 per month, depending on the job and skill level involved. [Citation.] Fifty percent of [Amaya's] wages and trust account deposits will be deducted to pay any outstanding restitution fine, plus another 5 percent for the administrative costs of this deduction." (*People v. Taylor*, *supra*, 43 Cal.App.5th at p. 402.) With at least $5.40 per month available to pay $140, Amaya will be able to pay off these amounts in less than three years into his over 50-year sentence. Thus, even assuming that these fines were wrongfully imposed under *Dueñas*,[2] the error was harmless beyond a reasonable doubt. (*People v. Jones*, *supra*, 36 Cal.App.5th at p. 1035.)

D. *Clerical Error in the Abstract of Judgment*

Even though the trial court imposed $140 in fees under section 1465.8 and Government Code section 70373, the abstract of judgment lists only one $70 fee under section 1465.8. "Courts may correct clerical errors at any time," and "[i]t is, of course, important that courts correct errors and omissions in abstracts of judgment." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We order that the abstract of judgment be corrected.

### III. DISPOSITION

The judgment of conviction is affirmed. The trial court is directed to modify the abstract of judgment to correctly indicate the imposition of fees and assessments under

---

[2] The issue is currently pending before the California Supreme Court. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

section 1465.8 and Government Code section 70373 and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

CODRINGTON
Acting P. J.

MENETREZ
J.