Filed 6/30/21  P. v. Jimenez CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MANUEL JESUS JIMENEZ,<br><br>    Defendant and Appellant. | H047943<br>(Monterey County<br>Super. Ct. No. SS150802A) |

A jury found defendant Manuel Jesus Jimenez guilty of multiple sex offenses against three minors over a two-year period.[1]  He was sentenced to an indeterminate term of 175 years to life in prison.  (*Jimenez I*, *supra*, 35 Cal.App.5th at p. 377.)  On direct appeal, we determined that sentence was unauthorized and remanded the matter for resentencing.  The trial court imposed an indeterminate term of 105 years to life and Jimenez appeals, arguing the sentence violates the federal and state constitutional prohibitions against cruel and/or unusual punishment.  We disagree and will affirm the judgment.

---

[1] In his opening brief, Jimenez requests that we take judicial notice of our prior opinion and the underlying record in this case, *People v. Jimenez* (2019) 35 Cal.App.5th 373, 376 (*Jimenez I*), and both parties cite to those materials in their briefing.  We grant the request for judicial notice.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Factual Background*[2]

#### 1.  *The Underlying Sexual Offenses*

Jimenez molested three girls, K.D., S.D., and A.D.,[3] on multiple occasions between January 2013 and May 2015.  (*Jimenez I*, *supra*, 35 Cal.App.5th at p. 379.)  K.D. testified that Jimenez began sexually abusing her when she was in seventh grade, touching her vagina both over and under her clothes, as well as sometimes inserting his fingers in her vagina.  (*Ibid*.)  Jimenez also tried to touch her breasts and would sometimes take her hand and try to put it inside his pants.  He later began giving her presents and tried to have sex with her in a field after driving her to a store to buy an iPod for her.

S.D. was 10 or younger when Jimenez started touching her in her "private" parts.  (*Jimenez I*, *supra*, 35 Cal.App.5th at p. 381.)  She indicated that Jimenez touched her chest and her groin.  Jimenez " 'moved his fingers on [her] private' " and occasionally one of his fingers would penetrate her vagina.  (*Ibid*.)  This happened more than once.  Sometimes, Jimenez would grab her wrist and put her hand on his "private part" while his pants were down.  (*Ibid*.)

A.D. met Jimenez the summer before ninth grade and, under the guise of wrestling with her, he would grope her.  (*Jimenez I*, *supra*, 35 Cal.App.5th at p. 381.)  Jimenez touched and squeezed her breasts and smacked her rear end.  When she slept over at K.D.'s house, A.D. would wake up to find Jimenez's face only inches away from hers.  (*Ibid*.)  He would put money under her pillow.  (*Ibid*.)  On one occasion, she was wearing a loose-fitting shirt and Jimenez came up behind her.  He tried to slide his hand up the

---

[2] Because the facts detailed in *Jimenez I* are not germane to the claim on appeal, we present an abbreviated discussion of them here.

[3] K.D. is the daughter of Jimenez's then-girlfriend, Kristine Doe.  Beginning in January 2012, Jimenez lived with Kristine, K.D., and Kristine's son, B.D.  S.D. and A.D. are K.D.'s cousins and frequently stayed overnight.

front of her shirt, but she was able to move away so Jimenez could only touch her stomach.

### B. *Procedural Background*

The prosecution charged Jimenez with 19 counts:  count 1—forcible lewd act on a child under 14 (digital penetration of K.D. while she was awake, the first time) (Pen. Code, § 288, subd. (b)(1));[4] count 2—forcible lewd act on a child under 14 (digital penetration of K.D. while she was awake, the last time) (§ 288, subd. (b)(1)); count 3—lewd act on a child aged 14 or 15 by a defendant at least 10 years older (touching K.D. in the car after buying her an iPod) (§ 288, subd. (c)); count 4—lewd act on a child under 14 (touching K.D.'s vagina while she was asleep, the first time) (§ 288, subd. (a)); count 5—lewd act on a child under 14 (touching K.D.'s vagina while she was asleep, the last time) (§ 288, subd. (a)); count 6—lewd act on a child aged 14 or 15 by a defendant at least 10 years older (putting his hand down K.D.'s pants as witnessed by S.D.) (§ 288, subd. (c)); count 7—sexual penetration of a child 10 or under (digital penetration of S.D., the first time) (§ 288.7, subd. (b)); count 8—sexual penetration of a child 10 or under (digital penetration of S.D., the last time) (§ 288.7, subd. (b)); count 9—forcible lewd act on a child under 14 (touching S.D.'s vaginal area, the first time) (§ 288, subd. (b)(1)); count 10—forcible lewd act on a child under 14 (touching S.D.'s vaginal area, the first time) (§ 288, subd. (b)(1)); count 11—lewd act on a child under 14 (touching S.D.'s vaginal area, the first time) (§ 288, subd. (a)); count 12—lewd act on a child under 14 (touching S.D.'s vaginal area, the last time) (§ 288, subd. (a)); count 13—lewd act on a child under 14 (touching S.D.'s chest) (§ 288, subd. (a)); count 14—lewd act on a child under 14 (touching A.D., the first time, when she was 13) (§ 288, subd. (a)); count 15—lewd act on a child under 14 (touching A.D., the last time, when she was 13) (§ 288, subd. (a)); count 16—lewd act on a child aged 14 or 15 by a defendant at least 10 years

---

[4] Unspecified statutory references are to the Penal Code.

older (putting his hand under A.D.'s shirt to touch her breasts) (§ 288, subd. (c));
count 17—lewd act on a child aged 14 or 15 by a defendant at least 10 years older
(incident involving A.D. in the Denny's parking lot on aunt's birthday) (§ 288, subd. (c));
count 18—sexual battery by restraint (incident involving A.D. in the Denny's parking lot
on aunt's birthday) (§ 243.4, subd. (a)); and count 19—lewd act on a child aged 14 or 15
by a defendant at least 10 years older (grabbing A.D.'s breasts and buttocks at the house
in Marina on aunt's birthday) (§ 288, subd. (c)).  As to counts 1, 2, 3, 4, 5, 6, 9, 10, 11,
12, 13, 14 and 15, the prosecution alleged Jimenez committed the offenses against more
than one victim.  (§ 667.61, subds. (b) & (e).)  (*Jimenez I*, *supra*, 35 Cal.App.5th at
pp. 377-378.)

The case went to trial in November 2016.  At the close of evidence, the trial court
granted the prosecution's motion to dismiss counts 9, 10, 18, and 19.  The jury found
Jimenez guilty on all remaining counts and found true the multiple-victim enhancements.

The probation officer's sentencing report, filed in December 2016, listed several
possible aggravating factors:  (1) the crimes involved the threat of great bodily harm;
(2) the victims were particularly vulnerable; (3) the manner in which the crimes were
carried out indicated sophistication; and (4) Jimenez engaged in violent conduct
indicating he is a serious danger to society.  The only mitigating factor identified by the
probation officer was that Jimenez had no prior criminal record.  In addition, the
sentencing report noted that Jimenez, then 42-years-old, had scored 0 (low risk) on the
Static-99, had no known drug or alcohol problems, and had completed only one grade of
schooling "because his father needed him to work" to assist the family.

The trial court imposed a determinate term of four years four months[5] and an
indeterminate term of 175 years to life in state prison.  The indeterminate term consisted
of seven consecutive terms of 25 years to life on counts 1, 2, 4, 5, 11, 12, and 14, with

_____

[5] The determinate term consisted of three years on count 3, consecutive
eight-month terms for counts 16 and 17, and a concurrent three-year term for count 6.

4

concurrent terms of 25 years to life on counts 13 and 15. On counts 7 and 8, the court imposed terms of 15 years to life in state prison but stayed the terms under section 654. (*Jimenez I*, *supra*, 35 Cal.App.5th at p. 378.)

On direct appeal, this court rejected Jimenez's claims of prosecutorial misconduct, evidentiary error, ineffective assistance of counsel, and sufficiency of the evidence. (*Jimenez I*, *supra*, 35 Cal.App.5th at p. 377.) However, because the trial court erroneously imposed sentencing enhancements which were not pleaded by the prosecution, we reversed the judgment and remanded for the limited purpose of resentencing. (*Id*. at p. 398.) We expressly declined to reach Jimenez's argument that his sentence amounted to cruel and unusual punishment under the California and federal Constitutions. (*Id*. at p. 397.)

Following remand, defense counsel filed a sentencing memorandum in the trial court, again raising the argument that Jimenez's indeterminate term amounted to cruel and/or unusual punishment under the state and federal Constitutions.

At the resentencing hearing, after indicating that the proper sentence for all counts with the multiple-victim enhancement was 15-years-to-life instead of 25-years-to-life, the trial court asked counsel if it had discretion to impose concurrent sentences on any of the counts. Defense counsel stated that the trial court had the discretion to impose concurrent sentences, but the prosecutor pointed out that the court had "already made the factual findings based upon the trial, based upon the circumstances of the case [to impose consecutive sentences]." Because we declined to consider Jimenez's cruel and unusual punishment argument in *Jimenez I*, the trial court stated its belief that it need not "reconsider that argument since it's not sent back to me for that purpose at this point." The trial court continued, "the sentence that was given here and after hearing the evidence in the case, I certainly thought it was appropriate. But also . . . it's more than, you know, a murder could get under our statutes. But nonetheless, we had multiple victims, and the Court did think it appropriate at the time." Accordingly, the trial court

5

imposed consecutive 15 years to life sentences on counts 1, 2, 4, 5, 11, 12, and 14, with concurrent 15 years to life terms on counts 13 and 15, for a total indeterminate term of 105 years to life. Jimenez's consecutive determinate term of four years four months was unchanged.

## II. DISCUSSION

### A. Constitutional Prohibitions on Cruel and/or Unusual Punishment

Jimenez argues that his sentence violates both the federal Constitution's prohibition against cruel and unusual punishment and the California Constitution's prohibition against cruel or unusual punishment[6] because it is disproportionate to his non-homicide offenses, especially taking his limited education, his lack of a prior criminal record, and his low risk of recidivism into account. He further contends that the sentence is "grossly disproportional" when compared to punishments imposed in California for more serious offenses and to punishments imposed in other jurisdictions for similar conduct.

### 1. Federal Constitution

"A punishment violates the Eighth Amendment if it involves the 'unnecessary and wanton infliction of pain' or if it is 'grossly out of proportion to the severity of the crime.' " (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230.) When the length of a particular sentence is challenged, "the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." (*Graham v. Florida* (2010) 560 U.S. 48, 59 (*Graham*).)

The calculus of whether a sentence is "grossly disproportionate" "must begin by comparing the gravity of the offense and the severity of the sentence." (*Graham*, *supra*, 560 U.S. at p. 60.) "Outside the context of capital punishment, successful challenges to

---

[6] "California affords greater protection to criminal defendants by prohibiting cruel 'or' unusual punishment," unlike the federal Constitution, which prohibits cruel *and* unusual punishment. (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1092.)

6

the proportionality of particular sentences have been exceedingly rare." (*Rummel v. Estelle* (1980) 445 U.S. 263, 272.)  Consequently, the United States Supreme Court has upheld life sentences imposed under state law for such offenses as possession of a large quantity of cocaine (*Harmelin v. Michigan* (1991) 501 U.S. 957), theft of a few golf clubs (*Ewing v. California* (2003) 538 U.S. 11), and obtaining money by false pretenses (*Rummel*, *supra*, 445 U.S. 263).  If " '[i]n the rare case' " an " 'inference of gross disproportionality' " can be drawn, "the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." (*Graham*, *supra*, at p. 60.)  It is only where "this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' " that the sentence will be found unconstitutional under the Eighth Amendment.  (*Ibid*.)

Jimenez's nonexistent prior criminal record and low recidivism score are factors in his favor.  We accord little to no weight to his de minimis education.  At oral argument, appellate counsel clarified that this circumstance was proffered to demonstrate Jimenez's ability to overcome obstacles, not to suggest an inability to understand the wrongfulness of his conduct.  On the other side of the scale, Jimenez's multiple sexual offenses committed over more than two years and abuse of a position of trust against three vulnerable victims, one of whom was under 10 years old, weigh heavily against him.  A comparison of all the relevant factors in this case does not ineluctably lead to an " 'inference of gross disproportionality.' " (*Graham*, *supra*, 560 U.S. at p. 60.)  While admittedly a severe sentence, we cannot say that it violates the Eighth Amendment.

### 2.  *California Constitution*

The California Constitution provides:  "Cruel or unusual punishment may not be inflicted or excessive fines imposed." (Cal. Const., art. I, § 17.)  A sentence may violate the state Constitution's prohibition on cruel or unusual punishment if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and

7

offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*).) "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (*Id*. at pp. 423-424.)

"A petitioner attacking his sentence as cruel or unusual must demonstrate his punishment is disproportionate in light of (1) the nature of the offense and defendant's background, (2) the punishment for more serious offenses, or (3) punishment for similar offenses in other jurisdictions." (*In re Nunez* (2009) 173 Cal.App.4th 709, 725, citing *Lynch*, *supra*, 8 Cal.3d at pp. 425, 431, 436.) "In examining the nature of the offense, we ' "look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts." ' [Citation.] In examining the nature of the offender, we consider ' "whether 'the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.' " ' " (*People v. Gomez* (2018) 30 Cal.App.5th 493, 500.)

"There exists a strong public policy to protect children of tender years." (*People v. Olsen* (1984) 36 Cal.3d 638, 646.) "[L]ewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable." (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806.) Sexual offenses against minors "may have lifelong consequences to the well-being of the child." (*Ibid*.) While these consequences result in part from the acts that constitute the sexual assault itself, the emotional and psychological

8

damage to a child assaulted by an adult in a position that would naturally engender a child's trust is now well known. Section 667.61 reflects the Legislature's "intolerance toward child sexual abuse" (*People v. Wutzke* (2002) 28 Cal.4th 923, 931) and "persons convicted of sex crimes against multiple victims within the meaning of section 667.61, subdivision (e)(5) 'are among the most dangerous' from a legislative standpoint." (*Id.* at pp. 930-931.) Consequently, "[t]he One Strike scheme . . . contemplates a separate life term for each victim attacked on each separate occasion." (*Id.* at p. 931.)

We cannot draw an inference of gross disproportionality from a comparison of Jimenez's crimes to the sentence imposed. Jimenez was an adult and had fathered his own child with K.D.'s mother just months before he began molesting K.D., S.D., and A.D. He took advantage of all the victims, two of whom came to his home to play with their cousin, and all of whom were vulnerable because they were young girls. He abused his authority as both an adult and as a parental figure. (Cal. Rules of Court, rule 4.421(a)(3) & (11); *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413 [victim's vulnerability and defendant's abuse of trust aggravating factors for the offense of forcible lewd acts on a child under 14].)

Although he had no prior criminal record, Jimenez was in his late 30s when he committed the offenses and presumably knew that his conduct was unlawful despite his limited schooling. There is no indication in the record that Jimenez had any sort of cognitive disabilities that would affect his knowledge of right versus wrong. Although his lack of a criminal record is favorable to him, it does not outweigh the other substantial aggravating factors. (See *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 845 [lack of prior record not determinative when "seriousness of the crime and the circumstances surrounding its commission substantially outweigh these factors"].)

Jimenez argues his punishment is grossly disproportional to the punishment imposed for "far more serious offenses" such as first degree murder (§ 190, subd. (a)), treason (§ 37, subd. (a)), second-degree murder involving a peace officer (§ 190,

9

subd. (c)), aggravated mayhem (§ 205), as well as various other sex offenses. But this analogy is inapt. Jimenez is asking us to compare the punishment imposed for his multiple sex offenses, committed over a nearly-two year period, against multiple vulnerable victims, to the punishment imposed for a single violation of one of the statutes identified in his briefing. Jimenez was a predatory, repeat offender, and his punishment neither shocks the conscience nor offends fundamental notions of human dignity.

Furthermore, "[t]he power to define crimes and prescribe punishments is a legislative function." (*People v. Young* (1992) 11 Cal.App.4th 1299, 1308.) We play a limited role in overseeing that function and pay "great deference . . . to legislation designed to protect children, who all too frequently are helpless victims of sexual offenses." (*In re Wells* (1975) 46 Cal.App.3d 592, 599.)

Jimenez next cites the "significantly lower penalties" "for similar conduct" in other jurisdictions, such as Kentucky, New York, Alabama, Alaska, Georgia, Texas, and Virginia. The Attorney General responds by pointing out several jurisdictions which impose "similar or greater punishments for offenses against children," including Arizona, Florida, Kansas, Michigan, Nebraska, Nevada, and Rhode Island.

In this step of the analysis, we compare the sentence "with the punishments prescribed for the *same offense* in *other jurisdictions* having an identical or similar constitutional provision." (*Lynch*, *supra*, 8 Cal.3d at p. 427.) However, merely because "California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.) The California Constitution "does not require [us] to march in lockstep with other states in fashioning a penal code" or "require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.' " (*Ibid.*, quoting *People v. Wingo* (1975) 14 Cal.3d 169, 179.) Again, the crafting of appropriate penalties is within the Legislature's remit "involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy

10

factors, and responsiveness to the public will." (*People v. Cooper* (1996) 43 Cal.App.4th 815, 827.)  Consequently, we "should not interfere in [this] process unless a statute prescribes a penalty ' "out of all proportion to the offense." ' " (*Ibid*., quoting *Lynch*, *supra*, at pp. 423-424.)  We see no such disproportionality here.

Having considered all three prongs under *Lynch*, we do not find Jimenez's indeterminate sentence so disproportionate to his crimes that it either shocks the conscience or offends fundamental notions of human dignity.  (*People v. Dillon* (1983) 34 Cal.3d 441, 477–478; *Lynch*, *supra*, 8 Cal.3d at p. 424.)  Given that Jimenez sexually assaulted several minors—one of whom was under 10 years of age—over a lengthy period of time, abusing his position as a de facto family member to do so, means that this is not one of those rare cases in which a sentence is out of all proportion to the offenses in violation of the state Constitution.  (*Lynch*, *supra*, at p. 424.)

### III.    DISPOSITION

The judgment is affirmed.

_____

Greenwood, P.J.


WE CONCUR:




_____

Grover, J.






_____

Danner, J.




People v. Jimenez
No. H047943