FYBEL, J.
*495 INTRODUCTION
*492 Defendant Pedro Garcia Gomez was convicted of crimes involving the sexual molestation of the victim, who is the daughter of defendant's live-in *496 girlfriend. The molestation occurred over several years during which time the victim was between three and eight years of age. Defendant was sentenced to 35 years to life. He raises several arguments on appeal challenging his convictions and his sentence. We affirm and, as the Attorney General concedes, we must remand for resentencing on two counts.
We conclude:
1. The prosecutor's rebuttal argument did not constitute burden shifting and was not misconduct.
2. Defendant forfeited the issue of whether the trial court erred in permitting an expert to testify regarding Child Sexual Abuse Accommodation Syndrome (CSAAS). If we were to address the issue, however, we would conclude that there was no error.
3. Three jury instructions-those addressing (1) CSAAS testimony, (2) the testimony of a child 10 years of age or younger, and (3) the elements of a violation of Penal Code section 288.7, subdivision (a)[1] -are correct statements of the law.
4. The trial court erred in instructing the jury that the violation of section 288.7, subdivision (b) was a general intent crime. When that statute is violated by sexual penetration, it is a specific intent crime. However, the error was harmless beyond a reasonable doubt because the jury was also instructed with the correct elements of the crime, including specific intent. In light of the full charge to the jury and the record, we conclude no rational jury could have found the specific intent element to be unproven.
5. In the published portion of our opinion, we hold that a sentence of 15 years to life for the sexual penetration of a child 10 years of age or younger is not cruel and/or unusual punishment. Under United States Supreme Court precedent, and in light of the serious nature of the crime, we find no error under the Eighth Amendment to the United States Constitution. We also conclude there was no error under the California Constitution, considering the nature of the offense and the offender, and the lack of disproportionality between the required sentence for violation of section 288.7, subdivision (b), and either the punishment for other crimes in California or the punishment for similar crimes in other states.
6. The trial court erred in imposing full-term consecutive sentences for defendant's two violations of section 288, subdivision (a). We will vacate these sentences and remand the matter to the trial court for resentencing on these two counts only.
*497 7. The trial court did not err in imposing a $300 restitution fine and a $300 parole revocation fine.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
The victim lived in a one-bedroom apartment with her mother, her older brother, defendant (who was the mother's boyfriend), and two half-siblings, who were the children of the mother and defendant. Defendant was like a father to the victim.
*493 The victim's mother taught the victim to respect defendant, and defendant helped raise the victim and her brother. On numerous occasions when the victim was between three and eight years old, defendant engaged in inappropriate sexual conduct with her, including touching her under her clothes, digitally penetrating her, making the victim touch his genitals, and forcing the victim to orally copulate him.
Defendant told the victim that if she ever told anyone about the molestation, he would hurt the victim's mother. Defendant also threatened to hit the victim when she attempted to get away from him. Defendant promised to give the victim money if she would orally copulate him.
The victim's older brother saw defendant touch the victim's "private parts" on more than one occasion.[2] The brother heard defendant say he would kill their maternal grandmother if the victim told anyone. The brother also witnessed defendant attempt to sodomize the victim. The brother tried to push defendant away, but defendant shoved him to the ground. When the brother said he was going to tell his mother what had happened, defendant threatened to kill the mother and the maternal grandmother. On another occasion, the brother heard defendant tell the victim to touch his genitals. The victim tried to fight back by kicking defendant, but defendant grabbed her legs and put his hand over her mouth.
When the victim was seven years old, her maternal grandmother moved in with the family, and slept in the living room. The maternal grandmother witnessed several incidents that caused her to suspect that defendant was sexually abusing the victim. The maternal grandmother asked the victim if defendant was touching her, but the victim denied it. The maternal grandmother claimed that she had a photo of defendant putting his hand on the victim's leg and asked the victim to tell the truth. The victim first said that defendant did not touch her, then said he touched her leg accidentally.
The maternal grandmother told the victim's mother to talk to the victim. The victim was initially nervous and upset and was laughing; eventually she *498 said to her mother, "I want to tell you that ... [defendant] is touching me." The victim's mother did not contact the police. Instead, she moved the victim to the top bunk bed, promised to make sure the victim was never alone with defendant, and promised to call the police if defendant ever touched the victim again.
When the victim was eight years old, the maternal grandmother again asked whether defendant had touched her. The victim revealed that defendant had penetrated her with his fingers. The maternal grandmother notified someone at the victim's school, who contacted the police.
In the presence of a police officer and a social worker, the victim initially denied any molestation and denied telling her mother she had been molested. She told the police officer she did not want to talk because she was afraid defendant would hurt her or her mother. As the interview progressed, the victim confirmed she had seen defendant's penis. During the interview, the victim was shaking and crying.
The victim had two separate interviews with social workers from the Child Abuse Services Team (CAST). The victim's discussion of the acts of molestation was *494 much more detailed during the CAST interviews than when she testified at trial.
In an information, defendant was charged with two counts of committing lewd acts on a child under 14 (§ 288, subd. (a) [counts 1 and 3] ), one count of forcibly committing a lewd act on a child under 14 (§ 288, subd. (b)(1) [count 2] ), and one count of sexual penetration with a child 10 years of age or younger ( § 288.7, subd. (b) [count 4] ). Following a jury trial, defendant was convicted of all counts.
The trial court sentenced defendant to a term of 35 years to life: an indeterminate term of 15 years to life on count 4, plus consecutive determinate terms of eight years on count 2, and six years each on counts 1 and 3. The trial court also ordered defendant to pay a $300 restitution fine (§ 1202.4), and a $300 parole restitution fine (§ 1202.45). Defendant timely filed a notice of appeal.
DISCUSSION
I.-III.**
*499 IV.
SENTENCING ISSUES
A.
Is the Life Sentence on the Section 288.7, Subdivision (b) Count Cruel and/or Unusual?
Defendant was sentenced to 15 years to life on count 4, for the sexual penetration of a child 10 years of age or younger. Defendant contends on appeal that this sentence constitutes cruel and/or unusual punishment because it is disproportionate to his criminal culpability and criminal history and to punishments for other crimes in California and for similar crimes in other states. In this case of first impression, we hold that defendant's sentence of 15 years to life on count 4 for sexual penetration of a child 10 years of age or younger is constitutional.
Special laws on the subject of sexual abuse of children have been enacted describing the types of acts that may be deemed criminal sexual misconduct. These laws "generally operate without regard to force, fear, or consent." ( People v. Reyes (2016) 246 Cal.App.4th 62, 85, 200 Cal.Rptr.3d 584.) The act of setting prison terms for specific crimes "involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.' " ( Harmelin v. Michigan (1991) 501 U.S. 957, 998, 111 S.Ct. 2680, 115 L.Ed.2d 836.) When considering a claim that a particular sentence amounts to cruel and unusual punishment, we give substantial deference both to the Legislature's broad authority to determine the parameters for the punishments for crimes, and to the trial court's discretion in imposing specific sentences. ( Solem v. Helm (1983) 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637.) "Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment." ( People v. Martinez (1999) 76 Cal.App.4th 489, 496, 90 Cal.Rptr.2d 517.)
The federal Constitution prohibits imposition of punishment that is "cruel and unusual." ( U.S. Const., 8th Amend.; see Robinson v. State of California (1962) 370 U.S. 660, 666-667, 82 S.Ct. 1417, 8 L.Ed.2d 758.) The United States Supreme Court has concluded that neither a 25-years-to-life sentence for stealing three golf clubs nor a 50-years-to-life sentence for stealing videotapes valued at $153 constitutes cruel and unusual punishment. ( *495 Ewing v. California (2003) 538 U.S. 11, 30-31, 123 S.Ct. 1179, 155 L.Ed.2d 108 ; Lockyer v. Andrade (2003) 538 U.S. 63, 77, 123 S.Ct. 1166, 155 L.Ed.2d 144.) In the present case, by contrast, defendant committed acts of sexual *500 molestation against a very young child-with whom he had the equivalent of a parent/child relationship-to satisfy his own sexual desires. Given the United States Supreme Court precedent and the nature of defendant's crimes, we conclude the sentence imposed did not constitute cruel and unusual punishment under the Eighth Amendment.
Our state Constitution provides: "Cruel or unusual punishment may not be inflicted or excessive fines imposed." ( Cal. Const., art. I, § 17.) A sentence may be cruel or unusual if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." ( In re Lynch (1972) 8 Cal.3d 410, 424, 105 Cal.Rptr. 217, 503 P.2d 921.) "The main technique of analysis under California law is to consider the nature both of the offense and of the offender." ( People v. Martinez, supra, 76 Cal.App.4th at p. 494, 90 Cal.Rptr.2d 517, citing People v. Dillon (1983) 34 Cal.3d 441, 479, 194 Cal.Rptr. 390, 668 P.2d 697.)
In examining the nature of the offense, we " 'look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts.' " ( People v. Reyes, supra, 246 Cal.App.4th at p. 87, 200 Cal.Rptr.3d 584.) In examining the nature of the offender, we consider " 'whether "the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." ' " ( Ibid. )
We quote from the trial court's comments at the sentencing hearing regarding both of these criteria:
"[T]he court does find that pursuant to [California Rules of Court, rule] 4.421(a) the crime did involve great bodily injury harm as well as the threat of future and further great bodily harm and a high degree of cruelty, and viciousness and callousness.
"He did threaten that he was going to hurt [her] or her brother if they told; that he was going to beat their mother if they told. And he molested her from the time she was little until she grew older with the progression of molestation activities that became more and more aggressive.
"She would kick him. He would contain her legs. He was much larger and so, you know, his progress at this was extremely disturbing for her and for her family.
"Under [ rule] 4.421(a)(8) the manner in which it was carried out did indicate some amount of planning in that they all lived in the same house.
*501 There wasn't a lot of privacy in the house. But he would make sure that he had access to her when her mother was gone and when the grandmother was not around so no one could see what was happening.
"It was only when the [grandmother walked] in and saw his hand on her leg and he moved it quickly that suspicion really arose to a different level, and the grandmother finally took all these fact[s] to the school because she didn't trust that her daughter would do the right thing and leave him, because there had already been things going on in the house, according to her, in that there was evidence from both I believe from grandma, and from the victim, that the defendant was actually striking the mother as well, none of which was charged, but certainly played into whether *496 or not someone [would] report this particular crime.
"Pursuant to [ rule] 4.421(a)(3) the victim, compare[d] to other victims, was really vulnerable. She was a little girl who lived in a house with him. She was alone. Physically, he was much larger, and she was too young to be able to fend him off or to even understand or be successful in escaping. She was afraid that everyone would be hurt who she loved if she were to tell, and she pretty much was isolated.
"Pursuant to rule 4.421(a)(11) the defendant did take advantage of a position of trust. He was the one who was suppose[d] to care for her and keep her safe when mother was at work, and unfortunately took advantage of that situation and he violated the trust that her mother had placed in him, and that she probably had in him to keep her safe.
"The factors in mitigation with a regard to the actions are none, but that factors in mitigation as to his background are that he has no criminal background that the court is aware of, so he has that in his benefit which is why the court is not giving an aggravated term."
Defendant, an adult, was in the position of a father figure to the victim, who was a child of very tender years when the molestation began. Defendant used the trust placed in him by the victim's mother, his physical dominance over the victim, and fear instilled by threats of harm to the victim and her family members to commit these crimes. Defendant had a very limited criminal record,[5] his defense expert testified that defendant did not suffer from paraphilia, and witnesses on behalf of defendant testified he was honest and did not have a reputation for being "vulgar" with children. On the whole, *502 however, the nature of the offender and the nature of the offense do not establish that the punishment was grossly disproportionate to the crime committed.
No disproportionality is demonstrated either by comparing defendant's punishment to punishments for other crimes in this state, or by comparing defendant's punishment to punishments for similar crimes in other states. Defendant notes that the 15-years-to-life sentence for violation of section 288.7, subdivision (b) is equal to that imposed for second degree murder, and is greater than the sentences imposed for first degree robbery, forcible rape, or forcible sodomy. It is well within the prerogative of the Legislature to determine that sex offenses against young children are deserving of longer sentences than sex offenses against adults or non-sex offenses. " 'Punishment is not cruel or unusual merely because the Legislature may have chosen to permit a lesser punishment for another crime. Leniency as to one charge does not transform a reasonable punishment into one that is cruel or unusual.' " ( People v. Baker (2018) 20 Cal.App.5th 711, 727, 229 Cal.Rptr.3d 431.)
Defendant presents the sentence ranges for sexual penetration with a minor from 10 other states. Defendant posits that because six of those jurisdictions give the sentencing court discretion to sentence a defendant to a determinate term, his term of 15 years to life is constitutionally infirm. We read defendant's survey differently. One of the jurisdictions cited (Florida) permits a sentence of life without the possibility of parole. Three others (Kansas, Nevada, and Ohio) permit a term of years to life, where the term of years is at least as long as that imposed here. Thus, several *497 other jurisdictions permit equivalent or harsher punishment for the equivalent crime. The punishment prescribed for violation of section 288.7, subdivision (b) does not shock the conscience.
Therefore, we conclude that the 15-years-to-life sentence imposed on defendant for violating section 288.7, subdivision (b) is not cruel and/or unusual punishment.
B.-C.***
V.†
*503 DISPOSITION
The sentences on counts 1 and 3 are vacated. The matter is remanded to the trial court for resentencing on counts 1 and 3. The judgment is affirmed in all other respects.
WE CONCUR:
BEDSWORTH, ACTING P. J.
THOMPSON, J.

All further statutory references are to the Penal Code unless otherwise noted.

The brother slept on the top bunk of the bunk bed, while the victim and her half-sisters slept on the bottom bunk.

See footnote *, ante .

Defendant's previous arrests were for leaving the scene of an accident involving property damage (Veh. Code, § 20002, subd. (a) ); driving without a license (id. , § 12500, subd. (a) ); making an unsafe turn (id. , § 22107); and disorderly conduct (§ 647, subd. (f) ).

See footnote *, ante .

See footnote *, ante .