Filed 7/11/24  P. v. Roberts CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062176 |
| v. | (Super. Ct. No. C-85009) |
| JEFFREY BLAINE ROBERTS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Cheri T. Pham, Judge.  Affirmed.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

In 1992, appellant Jeffrey Blaine Roberts was sentenced to life without the possibility of parole (LWOP) after he was convicted of special circumstances murder, among other offenses. In 2022, Roberts sought a proceeding to make a record of mitigating evidence to be used eventually at a youth offender parole hearing (YOPH). (See *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*); *In re Cook* (2019) 7 Cal.5th 439 (*Cook*).) The trial court denied the motion because Roberts was sentenced to LWOP and was 18 years old when he committed the offense, and thus was statutorily ineligible for a YOPH. On appeal, Roberts concedes he is statutorily ineligible because Penal Code section 3051, subdivision (h),[1] excludes young adult offenders[2] sentenced to LWOP. However, he argues this exclusion violates equal protection and violates the prohibition on cruel and/or unusual punishment under the United States and California Constitutions. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1992, a jury found Roberts guilty of first degree murder under section 187, among other offenses, and the jury also found true special circumstances existed of murder in the commission of a robbery, attempted robbery, and burglary under section 190.2. Roberts, who was 18 years old at the time he committed the offenses, was sentenced to LWOP. On appeal, this court struck the attempted robbery special circumstance and the conviction on a count for attempted robbery but otherwise affirmed the judgment. (*People v. Roberts* (Apr. 7, 1994, G013131) [nonpub. opn.].)

---

[1] All further statutory references are to the Penal Code.

[2] For conciseness, we use the phrase "young adult offenders" to refer to persons who committed the crime between the ages of 18 and 25 and the phrase "juvenile offenders" to refer to persons who committed the crime while under the age of 18.

In 2022, Roberts moved in the trial court for appointment of counsel and—under *Franklin* and *Cook*—a proceeding where he sought to make a record of mitigating evidence to eventually be used at a YOPH. The trial court denied the motion, finding Roberts was statutorily ineligible for a YOPH because he was a young adult offender sentenced to LWOP. The trial court also rejected Roberts' argument that this exclusion violated equal protection. Although recognizing there was a split of authority in Court of Appeal decisions, the trial court decided to follow the decisions holding there was no equal protection violation. Additionally, the trial court denied Roberts' argument that his exclusion from YOPHs and LWOP sentence constituted cruel or unusual punishment under the California Constitution.

## DISCUSSION

On appeal, Roberts argues the exclusion from YOPHs of young adult offenders sentenced to LWOP violates equal protection under the United States and California Constitutions. He also asserts this exclusion and his LWOP sentence violate the prohibitions on cruel and/or unusual punishment in the United States and California Constitutions. We disagree.

### A. Overview of Section 3051

We begin by providing a brief overview of section 3051, which has been written about extensively by courts. (See, e.g., *People v. Hardin* (2024) 15 Cal.5th 834, 842-846 (*Hardin*); *People v. Acosta* (2021) 60 Cal.App.5th 769, 775-777 (*Acosta*).) In 2013, the Legislature enacted section 3051 "in response to a series of decisions concerning Eighth Amendment limitations on juvenile sentencing." (*Acosta, supra,* 60 Cal.App.5th at p. 775; see also *Graham v. Florida* (2010) 560 U.S. 48, 82 (*Graham*) [concluding the Eighth Amendment "prohibits the imposition of [an LWOP] sentence on a juvenile offender who did not commit homicide"]; *Miller v. Alabama* (2012) 567 U.S. 460, 465

3

(*Miller*) [concluding the Eighth Amendment prohibits a mandatory LWOP sentence for a juvenile offender]; *People v. Caballero* (2012) 55 Cal.4th 262, 268 [concluding the Eighth Amendment prohibits "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy"].) "These decisions rested in part 'on science and social science' [citation], and noted that 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds' and in the 'parts of the brain involved in behavior control' [citations]." (*Acosta, supra,* 60 Cal.App.5th at pp. 775-776.)

"As initially enacted, section 3051 provided youth offender parole hearings only for juvenile offenders incarcerated for crimes committed before the age of 18." (*Hardin, supra,* 15 Cal.5th at p. 845.) However, "the statute excluded several categories of individuals, including juvenile offenders sentenced to [LWOP]." (*Ibid.*) Since its initial enactment, "the Legislature has expanded [the statute] in two primary respects." (*Ibid.*)

Regarding juvenile offenders, "the Legislature expanded section 3051 to include juvenile offenders sentenced to [LWOP], making them eligible for [YOPHs] after their 25th year of incarceration." (*Hardin, supra,* 15 Cal.5th at p. 845.) Regarding young adult offenders, "[i]n 2015, the Legislature raised the age of eligibility for [YOPHs] to include most young adults incarcerated for offenses committed before the age of 23[,]" and in 2017, "the Legislature once again raised the age cut-off for section 3051 parole hearings, this time to age 25. [Citations.]" (*Id.* at pp. 845-846.) "In expanding section 3051 beyond the constitutional minimum age of 18 set out in *Graham* and *Miller*, the Legislature considered scientific evidence that neurological development, particularly in areas of the brain relevant to

4

judgment and decisionmaking, continues beyond adolescence and into the mid-20's." (*Id.* at p. 846.) However, the statute continues to exclude young adult offenders sentenced to LWOP (among certain other exclusions not relevant here). (*Id.* at p. 846.)[3]

## B. Roberts' Equal Protection Arguments

Roberts concedes he is ineligible under section 3051 for a YOPH given he was sentenced to LWOP and 18 years old at the time of the murder. Roberts, however, argues this exclusion violates equal protection under the United States and California Constitutions on two grounds. First, Roberts contends there is an equal protection violation because the statute includes young adult offenders sentenced to parole-eligible terms. Second, Roberts asserts there is an equal protection violation because the statute includes juvenile offenders sentenced to LWOP.

"We review the constitutional question independently[.]" (*People v. Sands* (2021) 70 Cal.App.5th 193, 202 (*Sands*).) "Both the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee to all persons the equal protection of the laws." (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195 (*Jackson*).)[4] "'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' [Citation.]" (*Hardin, supra,* 15 Cal.5th at p. 847.) Although the California Supreme

---

[3] Section 3051, subdivision (h), provides "[t]his section shall not apply . . . to cases in which an individual is sentenced to [LWOP] for a controlling offense that was committed after the person had attained 18 years of age." Section 3051, subdivision (a)(2)(B), defines a "[c]ontrolling offense" as "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment."

[4] Roberts has not argued the analysis here is any different under the United States and California Constitutions, and "we see '"no reason to suppose" that federal equal protection analysis would yield a result different from what would emerge from analysis of the state Constitution.' [Citation.]" (*Hardin, supra,* 15 Cal.5th at p. 847, fn. 2.)

Court previously "set out a two-part inquiry to evaluate equal protection claims[,]" it recently held that, "when plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question." (*Id.* at pp. 848-850.) Instead, "[t]he only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Id.* at pp. 850-851.) Roberts, as the party challenging the law, has the burden of showing it is not adequately justified under the applicable standard of review. (*Id.* at p. 851.) The parties agree rational basis review applies here.

"Rational basis review 'sets a high bar' for litigants challenging legislative enactments[,]" and "[u]nder this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' [Citation.]" (*Hardin, supra,* 15 Cal.5th at p. 852.) "The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' [Citation.] Evaluating potential justifications for disparate treatment, a court reviewing a statute under this standard must 'treat the statute's potential logic and assumptions far more permissively than with other standards of constitutional or regulatory review.' [Citation.] 'If a plausible basis exists for the disparity, courts may not second-guess its "'wisdom, fairness, or logic.'"' [Citation.] '[T]he logic behind a potential justification need [not] be persuasive or sensible – rather than simply rational.' [Citation.]" (*Ibid.*, fn. omitted.)

6

Turning to Roberts' first argument, there was a split in authority on this issue when this appeal began, with one Court of Appeal decision determining the exclusion of young adult offenders sentenced to LWOP violates equal protection and numerous Court of Appeal decisions reaching the opposite conclusion. (*Hardin, supra,* 15 Cal.5th at p. 842, fn. 1.) But in *Hardin*, our Supreme Court resolved the issue against Roberts' argument. (*Id.* at pp. 838-840.) The defendant in *Hardin* was statutorily ineligible for a YOPH because he was a young adult offender who had been convicted of a special circumstance murder and sentenced to LWOP. (*Id.* at pp. 839-840.) The defendant in *Hardin* argued "once the Legislature decided to expand [YOPH] opportunities to young adults, it could not rationally treat those sentenced to life without parole differently from those convicted of other serious crimes and serving lengthy parole-eligible sentences." (*Id.* at p. 846.)

Our Supreme Court disagreed with the defendant's argument: "Without foreclosing the possibility of other as-applied challenges to the statute,[5] we conclude that Hardin has not demonstrated that . . . section 3051's exclusion of young adult offenders sentenced to [LWOP] is constitutionally invalid under a rational basis standard, either on its face or as applied to Hardin and other individuals who are serving [LWOP] for special circumstances murder. Under California law, special circumstance murder is a uniquely serious offense, punishable only by death or life without possibility of parole. When it was considering whether to expand the youth offender parole system to include not only juvenile offenders but also certain young adults, the Legislature could rationally balance the seriousness of the

---

[5] The juries in both Roberts's case and the defendant's case in *Hardin* found true a special circumstance for murder during the commission of a robbery, and Roberts has not asserted any as-applied challenge based on the specific circumstances of his case. (*Hardin, supra,* 15 Cal.5th at p.840.)

offender's crimes against the capacity of all young adults for growth, and determine that young adults who have committed certain very serious crimes should remain ineligible for release from prison." (*Hardin, supra,* 15 Cal.5th at p. 839.) *Hardin* applies here, and thus, we conclude Roberts has not demonstrated an equal protection violation.

We also reject Roberts' second argument. He concedes there is no reported case finding an equal protection violation because of the exclusion of young adult offenders sentenced to LWOP but inclusion of juvenile offenders sentenced to LWOP. Instead, Court of Appeal decisions, including a decision by a panel of this court, have consistently held there is not an equal protection violation on that ground. (See, e.g., *Acosta, supra,* 60 Cal.App.5th at pp. 779-780; *Sands, supra,* 70 Cal.App.5th at p. 204; *Jackson, supra,* 61 Cal.App.5th at pp. 196-198.)[6] We agree with *Acosta*'s conclusion that "there is a rational basis for distinguishing between juvenile LWOP offenders and young adult LWOP offenders: their age." (*Acosta, supra,* 60 Cal.App.5th at p. 779.)

As noted above, section 3051 initially excluded juvenile offenders sentenced to LWOP. (*Acosta, supra,* 60 Cal.App.5th at p. 776, 779.) In *Montgomery v. Louisiana* (2016) 577 U.S. 190, 206-212 (*Montgomery*), the United States Supreme Court held the prohibition from *Miller* on mandatory LWOP sentences for juvenile offenders applied retroactively, and it also noted a state "may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." As *Acosta* highlighted, section 3051 was subsequently amended and it "now

---

[6] The defendant in *Hardin* asserted an equal protection violation on this ground, but that argument was rejected by the Court of Appeal and not challenged before our Supreme Court. (*Hardin, supra,* 15 Cal.5th at pp. 840-841.) Our Supreme Court thus did not directly rule on the argument.

affords a [YOPH] to juvenile LWOP offenders to comply with *Montgomery* without resorting to costly resentencing hearings." (*Acosta, supra,* 60 Cal.App.5th at pp. 777, 779.) But *Miller* and *Montgomery* did not require parole considerations for young adult offenders sentenced to LWOP. "The Legislature thus had a constitutionally sufficient basis for distinguishing juvenile LWOP offenders from young adult LWOP offenders." (*Acosta, supra,* 60 Cal.App.5th at pp. 779-800.)

Roberts argues we should reach a different conclusion than *Acosta* because drawing a line at 18 years old "is arbitrary and should be extended at a minimum to 19 or older, as the ever-growing body of scientific data and research dictates." Roberts' argument is unavailing. "[B]oth the United States Supreme Court and our high court have repeatedly found the bright line drawn between juveniles and nonjuveniles to be a rational one when it comes to criminal sentencing." (*Jackson, supra,* 61 Cal.App.5th at pp. 196-197; see also *In re Murray* (2021) 68 Cal.App.5th 456, 464 ["the line between juveniles and adults remains a rational one"].) As discussed further below regarding the Eighth Amendment, we reject Roberts' argument that *Miller* should be extended to young adult offenders.

In sum, both of Roberts' equal protection grounds fail. As our Supreme Court observed, several published opinions, including one by a panel of this court, "have taken the additional step of calling on the Legislature to give further careful consideration to the issue." (*Hardin, supra,* 15 Cal.5th at p. 864; see also *Acosta, supra,* 60 Cal.App.5th at p. 781 ["we invite the Legislature to reconsider the provision in question"].) But as our Supreme Court also explained, "the question before us concerns only the constitutional permissibility of the lines the Legislature has drawn. It is not

9

for us to pass judgment on the wisdom or desirability of its policy choices." (*Hardin, supra,* 15 Cal.5th at p. 864.)

## C. Roberts' Cruel and/or Unusual Punishment Arguments

The Eighth Amendment of the United States Constitution prohibits "cruel and unusual" punishment, and Article I, section 17 of the California Constitution prohibits "[c]ruel or unusual" punishment. This difference in phrasing is ""purposeful and substantive rather than merely semantic. [Citations.]" [Citation.] As a result, we construe the state constitutional provision "separately from its counterpart in the federal Constitution. [Citation.]" [Citation.]' [Citation.]" (*People v. Baker* (2018) 20 Cal.App.5th 711, 723.) However, "[t]here is considerable overlap in the state and federal approaches." (*Id.* at p. 733.) "'Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment.' [Citation.]" (*People v. Em* (2009) 171 Cal.App.4th 964, 971 (*Em*).) Roberts raises separate arguments under the United States Constitution and the California Constitution for why his exclusion from YOPHs and LWOP sentence are purportedly unconstitutional.

### i. The United States Constitution

"The United States Supreme Court has made it clear that absent gross disproportionality in the defendant's sentence, no Eighth Amendment violation will be found." (*People v. Perez* (2016) 3 Cal.App.5th 612, 616 (*Perez*).) While Roberts recognizes *Miller* concluded the Eighth Amendment barred mandatory LWOP sentences for juvenile offenders, he argues *Miller* should be extended to young adult offenders. (*Miller, supra,* 567 U.S. at p. 465.) Roberts is essentially arguing the Eighth Amendment categorically prohibits mandatory LWOP sentences for any young adult offender (or at

10

least any offender who was 18 years old at the time of the offense).  However, a number of courts have rejected arguments to extend *Miller* to young adult offenders.  (See, e.g., *Acosta, supra,* 60 Cal.App.5th at p. 781 ["[w]e are aware of no authority extending *Miller* to encompass young adult LWOP offenders on the autism spectrum"]; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1030-1032 ["courts have limited the holdings of *Miller* to cases involving" juvenile offenders]; *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482 ["[w]e respect the line our society has drawn and which the United States Supreme Court has relied on for sentencing purposes"].)

Indeed, our Supreme Court rejected an argument that it was cruel and unusual punishment to impose the death penalty on a defendant who was 18 to 20 years old when the crime was committed.  (*People v. Tran* (2022) 13 Cal.5th 1169, 1234-1235 (*Tran*).)  The fact that the Legislature had expanded section 3051 did "'not establish the "national consensus" necessary to justify a categorical bar on the death penalty for individuals between the ages of 18 and 21 at the time of their offenses.  [Citation.]'"  (*Tran, supra,* 13 Cal.5th at pp. 1234-1235.)  "If the Eighth Amendment does not prohibit a sentence of death for 21 year olds, then most assuredly, it does not prohibit the lesser LWOP sentence."  (*In re Williams* (2020) 57 Cal.App.5th 427, 439, fn. omitted (*Williams*).)  Roberts' exclusion from YOPHs and LWOP sentence do not violate the Eighth Amendment.[7]

---

[7]     Roberts appears to argue this court can disregard precedent from the California or United States Supreme Courts.  However, we cannot simply disregard controlling precedent from a higher court.  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *Perez, supra,* 3 Cal.App.5th at p. 617 [recognizing "[o]ur nation's, and our state's, highest court have concluded 18 years old is the bright-line rule and we are bound by their holdings"].)

### ii. The California Constitution

"A sentence may be cruel or unusual if it is 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.]" (*People v. Gomez* (2018) 30 Cal.App.5th 493, 500 (*Gomez*).) There are three inquires that aid in evaluating this issue. (*In re Lynch* (1972) 8 Cal.3d 410, 425-427 (*Lynch*).) First, we "examine[] the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*Id.* at p. 425.) For this inquiry, "[w]e examine both the seriousness of the crime in the abstract and 'the totality of the circumstances surrounding the commission of the offense . . . , including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts.' [Citation.]" (*Em, supra,* 171 Cal.App.4th at p. 972.) "In examining the nature of the offender, we consider "'whether 'the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.'"" [Citation.]" (*Gomez, supra,* 30 Cal.App.5th at p. 500.) Second, we compare the defendant's punishment to punishments prescribed in California for more serious crimes. (*Lynch, supra,* 8 Cal.3d at p. 426.) Third, we compare the defendant's punishment to punishments prescribed for the same offense in other jurisdictions. (*Id.* at p. 427.) Notably, a "[d]efendant must overcome a 'considerable burden' to show the sentence is disproportionate to his level of culpability[,]' and thus, '[f]indings of disproportionality have occurred with exquisite rarity in the case law.' [Citation.]" (*Em, supra,* 171 Cal.App.4th at p. 972.)

On the first analysis, Roberts argues he was 18 years old and "lacked a mature awareness of adult responsibilities and of the consequences

12

of failing to meet these responsibilities." Roberts further asserts "[h]e had adverse childhood experiences, including divorced parents; he experienced verbal, emotional, and psychological abuse; he used alcohol and drugs, and he was exposed to negative peer associations." As support for these points, Roberts cites to his brief in the trial court. Even accepting as true these assertions, they do not establish that his punishment is unconstitutional given the circumstances, particularly the nature of the crime.

Roberts cites *People v. Dillon* (1983) 34 Cal.3d 441 (*Dillon*) and *In re Nunez* (2009) 173 Cal.App.4th 709 (*Nunez*) as purported support that this analysis shows disproportionality. But those cases affected defendants who were juveniles at the time of the offenses and also involved more extensive evidence. The defendant in *Dillon*, who was 17 years old at the time of the offense, was an "unusually immature youth" and there was expert testimony from a clinical psychologist. (*Dillon, supra,* 34 Cal.3d at pp. 482-484, 488.) The defendant in *Nunez*, who was 14 years old at the time of the offense, submitted a declaration of a psychiatrist who concluded the defendant suffered from posttraumatic stress disorder and the defendant's "mental functioning and behavior was diminished beyond that typical of 14-year-old children[.]" (*Nunez, supra,* 173 Cal.App.4th at pp. 714, 721-722, 733.)[8]

Moreover, Roberts' argument for this analysis omits any argument about the nature of the offense. However, Roberts' own brief describes the circumstances of the murder in an earlier section of the brief, including how, among other things, Roberts and a codefendant entered a jewelry store; the codefendant ordered the owner's two daughters into the

---

[8] Roberts does not make any arguments about his criminal record. Notably, the trial where Roberts was convicted of murder also resulted in certain burglary and robbery convictions related to an incident at a different jewelry store that had occurred a few weeks prior to the murder.

bathroom and taped their hands and mouths; one of the daughters heard Roberts ask the owner where the money was; Roberts hit the owner in the head with a gun several times; the owner was able to free one of his hands, which had been taped behind his back, and shot the codefendant twice; and Roberts shot and killed the owner. This does not support a finding that Roberts' sentence violates the California Constitution.

On the second analysis, Roberts argues the acts qualifying as special circumstances have expanded and "[t]here is thus no longer a clear distinction between the culpability of those who are or are not charged with a special circumstance as a matter of statutory definition." According to Roberts, "[t]he current state of scientific research showing that areas of the brain affecting judgment and decisionmaking do not fully develop until young adulthood thus does not allow a rational distinction in culpability between those sentenced to life without parole for a special circumstance murder and those sentenced to 25 years to life for first degree murder."

Roberts' argument is misplaced. Roberts does not make specific arguments about more serious crimes punished less severely than or the same as special circumstance murder. (See *Williams, supra,* 57 Cal.App.5th at p. 438 ["there is no crime more depraved or more injurious than intentional first degree murder"].) ""Punishment is not cruel or unusual merely because the Legislature may have chosen to permit a lesser punishment for another crime. Leniency as to one charge does not transform a reasonable punishment into one that is cruel or unusual."' [Citation.]" (*Gomez, supra,* 30 Cal.App.5th at p. 502.)

On the third analysis, Roberts concedes "it may be difficult to establish that California, in comparison to other jurisdictions in the United

14

States,[9] disproportionately sentences individuals convicted of [his] particular crime to LWOP," but he argues "it is nonetheless clear that among nations, and across time, the routine use of LWOP, no matter the crime, is an anomaly." This generalized assertion about "among nations" and "across time" is insufficient to establish that an LWOP sentence for Roberts' special circumstances murder is unconstitutional.

In sum, Roberts' exclusion from YOPHs and LWOP sentence do not violate the California Constitution's prohibition on cruel or unusual punishment.[10]

## DISPOSITION

The order is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


GOODING, J.

---

[9] Roberts only cites to two jurisdictions in the United States – Washington state and D.C. – that he says "have extended *Miller*'s guidance to age 21 or to age 25." (See *Pers. Restraint of Monschke* (2021) 482 P.3d 276, 277; D.C. Code § 24-403.03.) As Roberts' concession suggests, his argument about only two other jurisdictions is insufficient to show his sentence is unconstitutional. (See *Baker, supra,* 20 Cal.App.5th at p. 730 ["[t]he state constitution 'does not require California to march in lockstep with other states in fashioning a penal code'"].)

[10] To the extent Roberts is arguing mandatory LWOP sentences for young adult offenders are categorically cruel or unusual punishment under the California Constitution, this argument fails for the same reasons we conclude his Eighth Amendment argument fails.