Filed 7/1/25  P. v. Ruiz CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NATHARAN GIOVANNI RUIZ,<br><br>Defendant and Appellant. | F087021<br><br>(Super. Ct. No. VCF331034)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and John W. Powell, Deputy District Attorneys, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Natharan Giovanni Ruiz was convicted by jury of 11 counts of committing a lewd act upon a child (Pen. Code,[1] § 288, subd. (a), counts 1-6, 8-9, 11-13), oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b), count 7), and contacting a minor with the intent to commit a sexual offense (§ 288.3, subd. (a), count 10). The jury also found true special allegations alleging that the victims were under the age of 14 (§ 667.61, subd. (j)(2), counts 1-6, 8-9, 11-13), and that the crimes were committed against more than one victim (§ 667.61, subds. (b) & (e)). Ruiz was sentenced to an aggregate prison term of 150 years to life, plus six years.

On appeal, Ruiz contends that the exclusion of One Strike offenders from youth offender parole consideration (see § 3051, subd. (h)) violates his equal protection rights, as well as the Eighth Amendment. We conclude that *People v. Williams* (2024) 17 Cal.5th 99 (*Williams*) forecloses Ruiz's facial equal protection claim, his as-applied equal protection argument likewise fails, and that his Eighth Amendment challenge is both forfeited and meritless.

## FACTUAL AND PROCEDURAL HISTORY

On April 22, 2019, the Tulare County District Attorney charged Ruiz by first amended information with committing a lewd act upon a child (§ 288, subd. (a), counts 1-6, 8-9, 11-13), oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b), count 7), and contacting a minor with the intent to commit a sexual offense (§ 288.3, subd. (a), count 10). The information further alleged that some of the victims were under the age of 14 (§ 667.61, subd. (j)(2), counts 1-6, 8-9, 11-13), and that the crimes were committed against more than one victim (§ 667.61, subds. (b) & (e)).

On March 3, 2023, a jury found Ruiz guilty as charged.

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

On August 22, 2023, Ruiz was sentenced to an aggregate term of 150 years to life plus six years in state prison.

*The Underlying Convictions*

Ruiz lived in Porterville with his parents, Graciela and Fernando Ruiz, who were pastors at the Abundant Harvest Church (the church) in Porterville. Between 2012 and 2017, Ruiz molested four young girls whom he had met through the church.

**Abuse Involving S.P. (Counts 1 through 6)**

S.P. was born on April 5, 2003. She and her mother attended and were actively involved with Abundant Harvest Church and would regularly attend services and church activities held outside of services. Some of these activities were held at the home of Ruiz's parents.

In 2017, when S.P. was in eighth grade, she became depressed and was in a dark place. She began engaging in self-mutilation by cutting her wrists. S.P. confided in her middle school counselor that she had been sexually abused by multiple people, including Ruiz. The abuse was reported to law enforcement authorities.

On May 10, 2017, the same day that S.P. disclosed the abuse to her school counselor, she spoke with Officer Janet Ayala with the Porterville Police Department.

S.P. told Officer Ayala that the first time she had met Ruiz, she was at a family member's home. She was inside of a room watching television when Ruiz came inside, locked the door, and approached her as she sat on the bed. He pulled S.P. close to the edge of the bed by her legs, got on top of her, and began to caress her body, using his hands to touch her breasts, vagina, and butt. Ruiz began kissing her neck and chest.

S.P. pushed Ruiz and told him to "get off [of] her." She eventually managed to escape. S.P. was nine years old at the time of the incident.

Another time, while at the same house, Ruiz began touching S.P.'s breasts as he walked past her in a hallway. Ruiz threatened S.P. that "[i]f [she] said anything, … he would do worse."

3.

During a third occasion, S.P. attended an event held at the home of Ruiz's parents. She fell asleep in the living room while all the adults were in the backyard. Ruiz began touching her whole upper body, including her breasts. S.P. awoke and walked out of the room.

**Abuse Involving K.D. (Counts 7 and 8)**

K.D. regularly attended services at the church with her family until she was eight years old, when she moved away from the Porterville area. When K.D. was seven years old, Ruiz molested her at her home in Lindsay.

When everyone else was in separate rooms, Ruiz invited K.D. into the restroom with him. While inside, Ruiz began touching K.D.'s breasts underneath her clothes, he removed her pants, and he touched her vagina. When K.D. expressed her discomfort, Ruiz told her to be quiet or the others would hear her. He began kissing K.D. on her lips.

Despite her refusal, Ruiz forced K.D. to stroke his penis and to insert it into her mouth. After Ruiz ejaculated, he made sure the area outside of the restroom was clear before he told K.D. to leave.

When K.D. was between the ages of seven and 10 years old, Ruiz molested K.D. at least four more times at her home. During one of these incidents, Ruiz showed K.D. pornographic videos on his phone. On three separate occasions, Ruiz orally copulated K.D.'s vagina. And, during two of these incidents, Ruiz attempted to insert his penis into K.D.'s vagina. K.D. told Ruiz that it caused her pain, but he would insist on trying again, until she began raising her voice.

Ruiz also molested K.D. in one of the upstairs classrooms at the church on more than one occasion, including during the last time that he had sexually abused her. He would lure her upstairs by asking her to help him with something. While alone, in the classroom, Ruiz kissed K.D., touched her breasts and vagina, and attempted to digitally penetrate her vagina. During the incident, Ruiz's penis made contact with K.D.'s vagina, hand, and mouth.

In December 2017, after her aunt shared an article with her that included Ruiz's mugshot, K.D. disclosed the abuse. She initially told her aunt and mother about the abuse before speaking to law enforcement.

**Abuse Involving X.B. (Counts 9 and 10)**

X.B. attended the church until she was 14 years old. She knew Ruiz through the church.

On July 31, 2009, when X.B. was seven years old, she was playing with other children at her home while the adults were preparing for a wedding at the house. X.B. was in the living room on the couch. Ruiz sat next to her and covered them both with a blanket.

Ruiz pulled down his pants and began masturbating while attempting to touch X.B. over her clothing. Fifteen minutes later, X.B.'s mother and Ruiz's mother entered the room, at which point, Ruiz stopped.

When X.B. was approximately 10 or 11 years old, she was using a computer at the Ruiz family's home. Ruiz came out of his room, walked up next to her, exposed his penis, and began masturbating. He told X.B. that he would not leave unless she masturbated for him because it was "the only way it would go down." X.B. refused.

In 2013 or 2014, while X.B. and her mother were visiting with Ruiz's parents, X.B. fell asleep on the floor in a room where her brother was using a computer. She awoke to find Ruiz next to her, touching her inner thighs and vagina through her clothing. X.B. got up and left the room.

X.B. first spoke to law enforcement about the abuse in December 2017, after learning that her friend, S.P., had made similar allegations against Ruiz. She was initially reluctant to discuss details of the abuse with police because her mother did not support her involvement in the case. However, in January 2018, she decided to meet with police to discuss her experience with Ruiz.

5.

**Abuse Involving G.M. (Counts 11, 12, and 13)**

G.M. knew Ruiz through her involvement in the church. In 2015, when she was nine years old, G.M. and her family were invited to spend Thanksgiving at the Ruiz family home. G.M., along with her sisters and mother were visiting from out-of-town and planned to spend the night at the Ruiz residence.

That Thanksgiving, after dinner, G.M.'s mother instructed her and her sisters to go to sleep. G.M.'s mother was in the living room of the house with the other adults. While G.M. was in bed, Ruiz came to the door and asked her to come out of the room. When she complied, Ruiz guided her to his bedroom by putting his arm around her shoulder.

After they entered his room, Ruiz told G.M. he was going to give her a massage and directed her to lean forward onto the bed with her arms outstretched. G.M. followed his instructions because he was an adult and her mother trusted him.

Ruiz positioned himself directly behind her, pressing his chest against her back and his groin against her buttocks. G.M. felt his erect penis against her. Ruiz reached around her waist, put his hands inside her pants but over her underwear, and began touching her vaginal area. At some point, Ruiz pulled down G.M.'s pajama pants. When Ruiz attempted to penetrate her vagina digitally, G.M. closed her legs, told him "no," and said she felt uncomfortable. Ruiz persisted. The incident lasted for approximately 10 to 15 minutes until Ruiz lifted his body away from her.

G.M. attempted to leave but Ruiz grabbed her shoulders and hugged her from behind, trying to guide her back to the bed. Before relenting and allowing her to leave, Ruiz gave G.M. a jellybean and a chocolate and instructed her not to tell anyone.

G.M. went to the living room, where her mother was sitting with Ruiz's parents, and showed her the candy. Sensing G.M.'s distress, her mother took her into their bedroom, where G.M. disclosed what had occurred. When confronted with G.M.'s allegations the next day, Ruiz admitted they were true.

Following the incident, G.M. became depressed, withdrawn, and began having nightmares. This prompted her mother to schedule an appointment for G.M. with a Christian counselor. The counselor reported the abuse to law enforcement authorities.

On January 20, 2016, G.M. was interviewed in Orange County by forensic interviewer Sunday Petrie as part of a Child Abuse Response Team investigation. During the interview, G.M. described how Ruiz had sexually abused her.

On February 11, 2016, Ruiz was arrested. He was 25 years old at the time of his arrest.

## DISCUSSION

### I. Ruiz Has Not Demonstrated That His Exclusion From Youth Offender Parole Consideration Violates the Equal Protection Clause

Section 3051 generally provides incarcerated youth offenders with an opportunity for early parole consideration. (See *Williams*, *supra*, 17 Cal.5th at p. 113.) However, the statute expressly excludes from its reach individuals, such as Ruiz, who were "convicted of forcible sexual offenses and sentenced under the 'One Strike law.' " (*Id*. at p. 110, citing § 3051, subd. (h).) Ruiz contends this exclusion violates equal protection principles because it denies youthful One Strike offenders, like himself, a youth offender parole hearing, even though individuals convicted of first degree murder as youth offenders remain eligible. We conclude that our Supreme Court's decision in *Williams* forecloses his facial challenge to the statute, and that Ruiz's as-applied challenge lacks merit.

In *Williams*, the defendant committed a series of sexual offenses against two female victims when he was 24 years old. (*Williams*, *supra*, 17 Cal.5th at pp. 110-111.) He was convicted of 13 counts, including four One Strike offenses. (*Id*. at p. 112.) The trial court imposed a sentence of 25 years to life for each One Strike count, resulting in an aggregate sentence of 186 years two months to life. (*Ibid*.) On appeal, Williams argued that the categorical exclusion of One Strike offenders from youth offender parole

7.

consideration under section 3051 violated his rights under the equal protection clause. (*Id*. at pp. 112-113.)  Applying the rational basis standard to assess the equal protection claim, our Supreme Court determined that the Legislature had a rational basis for excluding One Strike offenders from early parole eligibility under section 3051, given the increased risk of recidivism linked to this group and the serious nature of their offenses. (*Id*. at pp. 124, 127-128.)

Nonetheless, shifting to an as-applied equal-protection challenge, Ruiz relies on the dissenting opinions of Justices Liu and Evans in *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*) and contends that section 3051, subdivision (h)'s exclusion of One Strike offenders, is unconstitutional as applied to him.  In *Hardin*, our Supreme Court considered the same subdivision, which also bars youth offenders convicted of special-circumstance murder from parole consideration.  The court ultimately upheld the exclusion after concluding that Hardin had not shown it to be categorically irrational. The court, however, left open the possibility of future challenges to "the distinctions drawn by the special circumstances statute based on a more robust record or a more focused as-applied inquiry." (*Hardin, supra*, 15 Cal.5th at p. 862.)

Justice Evans and Justice Liu dissented.  In her dissent, Justice Evans observed that Black and Latinx youths receive life-without-parole sentences at higher rates than White youths.  (*Hardin*, *supra*, 15 Cal.5th at p. 902 [dis. opn. of Evans, J.].)  She concluded that excluding LWOP offenders from the youth offender parole scheme "perpetuates severe racial disparities and, given its historical context, bears the taint of prejudice against Black and Brown youth."  (*Ibid*.)

Citing Justice Evans's dissent, Ruiz argues that his exclusion from a youth-offender parole hearing is unconstitutional as applied to him, a Latinx man born in Mexico.  Based on these factors, Ruiz contends that he was "statistically much more likely to receive … a sentence functionally equivalent to an LWOP term."

Although we do not dispute Justice Evans's observation, the *Hardin* majority nevertheless upheld section 3051, subdivision (h)'s exclusion and held that any claim based on racial disparity could be pursued through other avenues. The majority observed that "Hardin himself[]…ha[d] never argued that heightened scrutiny should apply to the facially neutral section 3051, subdivision (h), nor ha[d] he brought a constitutional claim based on the unequal or invidious enforcement of the special circumstance law." (*Hardin, supra*, 15 Cal.5th at p. 865, fn. 8.) Likewise, Ruiz offers no evidentiary record or targeted equal protection analysis to warrant further consideration of his argument in this appeal.

Ruiz further contends that as distinct from the defendant's crimes in *Williams*, a substantial portion of the crimes for which he was convicted merely involved "touching parts of the [victim's] bodies." We find Ruiz's attempt to minimize the severity of his crimes unavailing.

Ruiz molested four separate victims, all of whom were under the age of 14. These aggravating circumstances qualified him for punishment under the One Strike law. (See § 667.61, subds. (a), (e)(4) & (j)(2).) His exclusion from youth offender parole consideration reflects a Legislative judgment that "One Strike offenders are less amenable to rehabilitation." (*Williams, supra*, 17 Cal.5th at p. 130.) While that judgment may be a gross generalization which is not applicable to every offender sentenced under the One Strike law, " '[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' " (*Id*. at p. 130, quoting *People v. Turnage* (2012) 55 Cal.4th 62, 77.)

In his reply brief, Ruiz submits that his exclusion from youth offender parole consideration is also unconstitutional based upon the following factors: his age at the time of the commitment offenses, his lack of prior criminality, and his "low risk" of future criminality. He directs us to *People v. Briscoe* (2024) 105 Cal.App.5th 479 (*Briscoe*), a decision by the First District Court of Appeal, Division 4, wherein the

appellate court upheld an as-applied challenge to section 3051's categorical exclusion of special circumstance murders. We find Ruiz's reliance upon *Briscoe* flawed for two reasons.

First, Ruiz's as-applied challenge to section 3051 was not raised in the trial court below. Generally, the failure to raise an as-applied challenge below resulted in forfeiture of the claim on appeal. (See *People v. Patton* (2019) 41 Cal.App.5th 934, 946 ["An as-applied constitutional challenge is forfeited unless previously raised."].)

Second, *Briscoe* is factually and legally distinguishable from the instant case. The defendant, Briscoe, was 21 years old when he and an accomplice robbed an acquaintance. During the robbery, the victim grabbed Briscoe's gun and began firing at the accomplice, ultimately killing him. Briscoe was convicted of first degree murder, robbery, and burglary, along with a special circumstance finding under section 190.2, subdivision (d). (*Briscoe*, *supra*, 105 Cal.App.5th at p. 485.)

On appeal from the denial of his motion for a youth offender parole hearing and a *Franklin*[2] hearing, Briscoe contended that section 3051, subdivision (h)'s exclusion of youth offenders sentenced to life without parole violated the Equal Protection clause. Specifically, he challenged section 3051's exclusion of youth offenders convicted of special circumstance murder as nonkiller participants in certain felony homicides (see § 190.2, subd. (d)), arguing that it discriminates against them in comparison to individuals convicted of nonspecial circumstance first degree felony murder for the same underlying felonies, under the identical standard outlined in section 189, subdivision (e)(3). (*Briscoe*, *supra*, 105 Cal.App.5th at pp. 485-486.)

The appellate court observed that, considering the circumstances of the offense and the specific special circumstance for which Briscoe was convicted, his culpability was no different from that of an offender convicted of first degree felony murder under

---

[2] *People v. Franklin* (2016) 63 Cal.4th 261.

10.

section 189, subdivision (e)(3). Nevertheless, while an individual convicted of first degree felony murder would qualify for youth offender parole consideration, Briscoe is statutorily ineligible. The court held, "[t]he disparate treatment of offenders who committed murder per these identical provisions during the same underlying felonies cannot reflect any difference in culpability." (*Briscoe*, *supra*, 105 Cal.App.5th at p. 492.) Indeed, "the seriousness of the crime committed by the two groups of offenders is exactly the same." (*Id.* at p. 494.)

While *Hardin* did not foreclose all as-applied challenges to section 3051 (see *Hardin, supra*, 15 Cal.5th at p. 862), a fact which is illustrated by our colleague's decision in *Briscoe*, the facts and circumstances of Ruiz's crimes and his background, do not persuade us that his exclusion from youth offender parole consideration is unconstitutional as applied to him—a defendant who sexually abused multiple children. We therefore conclude that Ruiz's as-applied equal protection challenge fails.

## II. Ruiz's Claim That His Sentence is Unconstitutionally Excessive is Forfeited and Without Merit

Ruiz contends that his sentence of 150 years to life plus six years violates the Eighth Amendment to the United States Constitution.[3] The Attorney General submits that Ruiz has forfeited his claim, and that it is meritless given that Ruiz was an adult when he committed his offenses. We agree with the Attorney General.

---

[3] For the first time in his reply brief, Ruiz claims that his sentence violates not only the federal Constitution, but the California Constitution. Generally, points raised for the first time in a reply brief are deemed waived, as it deprives the opposing party of the opportunity to respond. (See *People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.) Nonetheless, because the relevant federal and state constitutional provisions substantially overlap, we address Ruiz's state constitutional claim on the merits.

**A.     Applicable Law**

*1.     "Cruel and Unusual Punishment" Under the Federal Constitution*

The Eighth Amendment of the United States Constitution, which applies to states under the due process clause of the Fourteenth Amendment, prohibits cruel and unusual punishment.  (*Graham v. Florida* (2010) 560 U.S. 48, 58 (*Graham*).)  In general, punishment is cruel and unusual under the Eighth Amendment if it is "grossly disproportionate" to the crime committed.  (*Id*. at p. 60.)  In determining whether a punishment is grossly disproportionate to the offense, "the [c]ourt considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive."  (*Id.* at p. 59.)

The calculus of whether a sentence is "grossly disproportionate" "must begin by comparing the gravity of the offense and the severity of the sentence."  (*Graham, supra*, 560 U.S. at p. 60.)  "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."  (*Rummel v. Estelle* (1980) 445 U.S. 263, 272.)

However, if " '[i]n the rare case' " an " 'inference of gross disproportionality' " can be drawn, "the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions."  (*Graham, supra*, 560 U.S. at p. 60.)  It is only where "this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' " that the sentence will be found unconstitutional under the Eighth Amendment.  (*Graham*, at p. 60.)

*2.  "Cruel and Unusual Punishment" Under the California Constitution*

Under the California Constitution, a sentence constitutes cruel or unusual punishment if it is " 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' "  (*People v. Dillon* (1983) 34 Cal.3d 441, 478; Cal. Const., art. 1, § 17.)

"A petitioner attacking his sentence as cruel or unusual must demonstrate his punishment is disproportionate in light of (1) the nature of the offense and the defendant's background, (2) the punishment for more serious offenses, or (3) punishment for similar offenses in other jurisdictions." (*In re Nunez* (2009) 173 Cal.App.4th 709, 725, citing *In re Lynch* (1972) 8 Cal.3d 410, 425, 431, 436, superseded by statute, as stated in *In re Palmer* (2021) 10 Cal.5th 959, 974.)

"In examining the nature of the offense, we ' "look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts." ' [Citation.] In examining the nature of the offender, we consider ' "whether 'the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.' " ' " (*People v. Gomez* (2018) 30 Cal.App.5th 493, 500.) "Reviewing courts … should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." (*Solem v. Helm* (1983) 463 U.S. 277, 290.)

## B. Analysis

The Attorney General contends that Ruiz's claim that his sentence constitutes cruel and unusual punishment was made for the first time on appeal and is therefore forfeited. (See *People v. Baker* (2018) 20 Cal.App.5th 711 ["[a] claim that a sentence is cruel or unusual requires a 'fact specific' inquiry and is forfeited if not raised below"]; accord, *People v. Speight* (2014) 227 Cal.App.4th 1229, 1247; *People v. Russell* (2010) 197 Cal.App.4th 981, 993.) Ruiz fails to direct us to any portion of the record demonstrating that he raised his claim below. We therefore conclude that Ruiz has forfeited his claim.

Even if we were to exercise our discretion to reach the merits of his claim, we observe that California courts have consistently rejected similar arguments. (See *People*

*v. Baker*, *supra*, 20 Cal.App.5th at pp. 720, 723-732; *People v. Christensen* (2014) 229 Cal.App.4th 781, 806-809 (*Christensen*); *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1092-1094.)

Ruiz nonetheless asserts that his sentence is disproportionate to his crimes, which were all for nonhomicide offenses, because "some of [those crimes] are comprised of touching [the] victim's body parts over [their] clothing." Even though he was not convicted of a homicide-related offense, the severity of Ruiz's conduct cannot be understated. Ruiz molested four young girls whom he had met through church activities. Some of the victims were molested repeatedly, and during some of these acts, Ruiz either attempted to or actually did penetrate the victims digitally and with his penis.

The victims described being traumatized by the abuse. One of the victims, a middle-schooler, began cutting herself after she was sexually abused by Ruiz. She testified that the sexual abuse she suffered by Ruiz "traumatized [her] and nearly drove [her] to commit suicide." Another one of the victims stated that after she had been sexually abused, she began therapy at the age of nine years old.

While the sexual abuse of a child may not be the most grave of all offenses, it "is a most serious crime and an act repugnant to the moral instincts of a decent people." (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 244.) Moreover, sexual offenses against minors "may have lifelong consequences to the well-being of the child." (*Christensen*, *supra*, 229 Cal.App.4th at p. 806.)

Given the impact of sex crimes on children, California appellate courts have repeatedly upheld lengthy prison terms for defendants who commit such crimes, including sentences exceeding the defendant's natural life. (See *Christensen*, *supra*, 229 Cal.App.4th at pp. 803-806 [affirming a sentence of 27 years to life for five counts of lewd conduct upon three boys under the age of 14]; *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1222 [cumulative sentence of 135 years to life for conviction of 16 sex offenses involving four children was not cruel and unusual punishment]; *People v.*

*Bestelmeyer* (1985) 166 Cal.App.3d 520, 531 [sentence of 129 years for multiple offenses committed against defendant's 11-year-old stepdaughter did not constitute cruel and unusual punishment].) Ruiz offers no persuasive reason why his case should be treated differently.

We acknowledge the presence of mitigating circumstances in this case, including, Ruiz's lack of a prior criminal record, the fact that he was under the age of 26 at the time of his offenses, and his low-risk score on the STATIC-99R assessment. When weighed against the severity of his offenses, however, these factors do not show that his sentence " ' " 'hocks the conscience and offends fundamental notions of human dignity' " ' " (*People v. Landry* (2016) 2 Cal.5th 52, 125; Cal. Const., art. 1, § 17), nor are we persuaded that the sentence imposed was grossly disproportionate to Ruiz's crimes (see *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001; U.S. Const., 8th Amend.) Based on the foregoing, we conclude that Ruiz's claim that his sentence violates the federal and State Constitutions is without merit.

## DISPOSITION

The judgment is affirmed.


FRANSON, Acting P. J.

WE CONCUR:


PEÑA, J.


DE SANTOS, J.