Filed 6/3/26  P. v. Herrera CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAVIER GOMEZ HERRERA,<br><br>    Defendant and Appellant. | 2d Crim. No. B337508<br>(Super. Ct. No. SA105206)<br>(Los Angeles County) |

Javier Gomez Herrera appeals from the judgment after a jury convicted him of 15 offenses he committed against 11 women, most of whom were passengers in his Uber/Lyft vehicle. At trial, he conceded guilt on nine of the charged counts.  He was sentenced to life with the possibility of parole after seven years on three counts plus 12 years in state prison.  On appeal, Gomez Herrera raises claims of instructional error, prosecutorial misconduct, and an unconstitutional sentence.  We affirm.

FACTS AND PROCEDURAL HISTORY

On August 27, 2021, Los Angeles County Police Detective Lesley Perkins went to an apartment in the UCLA area after one

of the residents, G.S., reported that someone entered her apartment and sexually assaulted her. Detective Perkins obtained a surveillance video in which she observed a car parked near G.S.'s apartment around the time the incident occurred. The video showed the man got out of the car, entered G.S.'s apartment, and went into her bedroom for about 20 minutes. The detectives created a crime bulletin including the description of the suspect and the car, a gray Ford Fusion.

Two weeks later, a UCLA police officer who was aware of the crime bulletin noticed an unoccupied car that was "running" and parked on a red curb about half a block from G.S.'s apartment. After the car began moving, the officer initiated a traffic stop, and he obtained the driver's license. The driver was Gomez Herrera. The officer notified Detective Perkins of the encounter and sent her a picture of Gomez Herrera's license and still images from the officer's body camera. From this information, Detective Perkins learned that Gomez Herrera previously rented a gray Ford Fusion.

Gomez Herrera was arrested a few days later. Officers found three cell phones in his car. One of the phones contained videos depicting the sexual assaults of several unconscious women. Gomez Herrera had red rashes on his right arm and freckles on his left hand above the middle finger knuckle. The hands depicted in the videos matched Gomez Herrera's hands. Officers searched his home and found clothing matching those seen in the videos. Gomez Herrera was an Uber and Lyft driver. Detective Perkins obtained his work history to identify the

victims in the videos.  The jury was presented with numerous videos.  All the women except one testified at trial.[1]

*Count 1 (G.S.) and count 2 (M.L.)*

G.S. and M.L. were roommates who shared a bedroom.  In March 2021, G.S. took an Uber ride to her apartment.  Gomez Herrera was her driver.  Without her knowledge, he took videos of her during the ride and as she went up to her apartment.  He took videos of her sleeping from outside her bedroom window.  Videos from his phone showed that he returned to G.S.'s home five times from April to June 2021.

On August 4, 2021, G.S. was out of town.  M.L. was alone in the bedroom and fell asleep naked.  Around 2:00 a.m., she woke up and noticed the bedroom door opening and a bright flashlight on her face.  She saw a "middle-aged Hispanic man" in her bedroom.  He said, "Oh, sorry" and turned around and left.  When he left, M.L. noticed the back door of the apartment was open.

Gomez Herrera took a video of him entering M.L.'s bedroom and her lying in bed.  M.L. identified herself in still images from the video and identified Gomez Herrera in a photo lineup and at trial.

Videos from Gomez Herrera's phone showed he returned to the apartment two more times a few weeks later and filmed G.S. from outside the apartment windows.

On August 27, M.L. was out of town, and G.S. slept alone in the bedroom.  G.S. woke up when she noticed a flashlight above her head and a man standing next to her.  Her bed covers were pulled down to her ankles, and the man was touching her vagina over her underwear.  He was stroking his penis over his clothes.

---

[1] Victim E.G. died before trial.  The jury was informed she passed away "due to unrelated causes."

When she jumped out of bed and started yelling, the man walked out of the apartment. G.S. called the police.

Gomez Herrera took 15 videos on his phone, which showed him inside G.S.'s bedroom, going through a laundry basket and taking out pairs of women's underwear. He filmed G.S. sleeping with her breasts exposed. One video showed him moving her underwear and putting his finger toward her vagina, and another video showed him reaching from behind toward her vaginal area. Another video showed him fondling her breasts. G.S. identified herself in still images taken from the videos.

G.S. and M.L. moved out of the apartment at the end of August. Gomez Herrera returned to the apartment two more times thereafter.

*Counts 3–5 (E.G.) and counts 6–7 (E.-L.S.)*

E.G. and E.-L.S. were close friends. In July 2020, they spent the day and night together, and had about seven or eight drinks each throughout the entire day. Around 3:00 a.m., they were feeling intoxicated and decided to return to E.-L.S.'s home. One of E.G.'s other friends requested an Uber, and the three of them got into the car. E.-L.S. recalled entering the car, and she could not remember what happened afterward. She woke up naked in her home the next morning. E.G. and her friend were in the living room sleeping. E.-L.S. noticed her front door and the gate to that door were slightly open.

Gomez Herrera took 13 videos on his phone relating to E.G. and E.-L.S. The videos showed E.-L.S. sleeping on her bed and Gomez Herrera moving her legs and penetrating her vagina with his fingers. The videos showed E.G. sleeping on the sofa, Gomez Herrera spreading her legs apart, and him using his fingers to penetrate her vagina. He also lifted her top and fondled her

4

breast while he masturbated. He then penetrated her vagina with his finger again and touched her breasts again. E.-L.S. identified herself and E.G. in still images taken from the videos. She obtained the Uber receipt, which showed Gomez Herrera was their driver.

*Counts 8–9 (Y.L.)*

In October 2019, Y.L. called a Lyft. She identified Gomez Herrera as the driver. He offered her a water bottle, which she drank and "passed out." When she woke up, his fingers were touching her vagina under her underwear. She felt penetration.

Gomez Herrera recorded 13 videos, which showed him moving Y.L.'s underwear to expose her vagina and using his fingers to penetrate her vagina. In another video, he touched her vagina while he masturbated. He also fondled her breasts and put his mouth on her breast. Y.L. identified herself in still images from the videos and obtained a Lyft receipt showing Gomez Herrera was her driver.

*Count 10 (S.A.)*

In September 2019, S.A. went out to celebrate a friend's birthday, became "very drunk," and did not remember getting home. She later saw from a receipt that she took a Lyft to return home. Gomez Herrera recorded six videos, which showed S.A. sleeping in the backseat, and him inserting his finger into her vagina. S.A. identified herself in a still image taken from a video.

*Count 11 (L.S.)*

In October 2019, L.S. ordered a Lyft to take her home after drinking. She did not remember the ride home. Gomez Herrera took seven videos, which showed L.S. unconscious. He inserted his fingers into her vagina and touched her chest. L.S. identified

5

herself from a still image taken from a video and obtained a copy of the Lyft receipt, which showed Gomez Herrera was her driver.

*Count 12 (G.C.)*

In May 2021, G.C. drank several shots of tequila at a bar. Her friend requested an Uber for G.C. G.C. got into the Uber alone. She "blacked out" on the ride home. She met the Uber driver the next day because she had left her phone in his car. She identified Gomez Herrera as the driver.

Gomez Herrera took six videos, which showed him lifting G.C.'s shirt and touching her nipple and breast. He put his finger underneath her pants and underwear and penetrated her vagina with his finger. G.C. was sleeping. G.C. identified herself in still images taken from a video and obtained a copy of the Uber receipt, which showed Gomez Herrera as the driver.

*Count 13 (V.V.)*

In October 2020, V.V. requested an Uber. She fell asleep in the car and did not remember the ride home. Gomez Herrera took nine videos, which showed V.V. sleeping. He reached for her right thigh, touched her breasts, and exposed and touched her nipples. V.V. identified herself in a still image taken from a video and obtained the Uber receipt, which showed Gomez Herrera was the driver.

*Count 14 (B.R.)*

In October 2020, B.R. requested an Uber ride to her home. She fell asleep in the car and woke up screaming and crying. She ran out of the car and tried to call her boyfriend. When her boyfriend contacted her, she told him, "a man was trying to touch her." B.R. said she did not remember details except she got into an Uber and when she woke up, she was kicking someone off her. Gomez Herrera took one video showing B.R. sleeping in his car

and him touching her nipple.  B.R. identified herself in a still image taken from the video.

### Count 15 (L.G.)

In October 2020, L.G. went to a house party and had one or two drinks.  She requested an Uber ride.  She fell asleep and did not remember the Uber ride back to her hotel.  Gomez Herrera took 11 videos, which showed L.G. asleep in his car.  He adjusted her shorts and moved her hair away from her bralette.  He exposed her nipple and made a pinching motion in the area of the nipple over her bralette.  He touched her breast.  L.G. identified herself in a still image taken from a video and obtained an Uber receipt, which showed Gomez Herrera was the driver.

### Jail phone calls

On the day after his arrest, Gomez Herrera made phone calls to a woman.  The jury heard recordings of these phone calls and were provided with a Spanish to English translation of the calls.  Gomez Herrera told the woman that he met G.S. when he drove her and a friend to her apartment.  He said he went back to the apartment and saw them naked through a window.  He also said that he took videos on his phone.  He returned to the apartment again when the residents were asleep.  He admitted touching G.S. and masturbating while inside the apartment.

### Concession, jury verdict, and sentencing

During closing argument, Gomez Herrera conceded guilt on counts 4, 5, 7, 8, 9, 10, 11, 13, and 14.

The jury found Gomez Herrera guilty of all 15 counts as charged: assault with intent to commit sexual penetration during a burglary as to G.S. (Pen. Code,[2] § 220, subd. (b); count 1); first

---

[2] Further unspecified statutory references are to the Penal Code.

degree burglary involving M.L. (§§ 459, 667.5, subd. (c)(21); count 2); assault with intent to commit sexual penetration during burglary as to E.G. (§ 220, subd. (b); count 3); sexual penetration of an unconscious person as to E.G. (§ 289, subd. (d)(2); count 4); sexual battery of E.G. (§ 243.4, subd. (e)(1); count 5); assault with intent to commit sexual penetration during burglary as to E.-L.S. (§ 220, subd. (b); count 6); sexual penetration of an unconscious person as to E.-L.S. (§ 289, subd. (d)(2); count 7); sexual penetration of an intoxicated person as to Y.L. (§ 289, subd. (e); count 8); sexual battery of Y.L. (§ 243.4, subd. (e)(1); count 9); sexual penetration of an unconscious person as to S.A., L.S., and G.C. (§ 289, subd. (d)(2); counts 10, 11, and 12); and sexual battery of V.V., B.R., and L.G. (§ 243.4, subd. (e)(1); counts 13, 14, and 15).

The court sentenced Gomez Herrera to an indeterminate term of life with the possibility of parole after seven years on counts 1, 3, and 6 each, and a determinate term of 12 years (four years on count 2, consecutive two years each for counts 8, 10, 11, and 12). It stayed six-year terms for counts 4 and 7 and six-month terms for counts 5 and 9, and imposed concurrent six-month terms for counts 13, 14 and 15. Gomez Herrera challenges his convictions on counts 1, 2, 3, 6, 12, and 15.

## DISCUSSION

### CALCRIM No. 1191B

Gomez Herrera contends the modified CALCRIM No. 1191B instruction violates due process because it deprived him of the presumption of innocence and a right to a finding of guilt beyond a reasonable doubt. The jury was instructed: "If the People have proved beyond a reasonable doubt that the defendant committed one or more of [the sex offenses charged in counts 1, 3

8

through 15], you may, but are not required to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and, based on that decision, also conclude that the defendant was likely to commit the other sex offenses charged in this case. [¶] If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge and allegation beyond a reasonable doubt."

Gomez Herrera did not object to this instruction. Failure to object to an instruction forfeits the issue unless the error affects his substantial rights. (*People v. McCoy* (2013) 215 Cal.App.4th 1510, 1535 (*McCoy*); § 1259.) Because Gomez Herrera asserts a constitutional violation and raises an ineffective assistance of counsel claim, we address the issue on the merits.

There was no error. Our Supreme Court upheld a similar instruction in *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*) and *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford*). We are bound by the decisions of our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*).)

In *Villatoro*, our Supreme Court upheld a modified version of CALCRIM No. 1191, which instructed the jurors that if they decided that the defendant committed one of the charged sexual offenses, they may "conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape and sodomy, and based on that decision also conclude that the defendant was likely to and did commit" the

9

other charged rape and sodomy crimes.  (*Villatoro*, *supra*, 54 Cal.4th at p. 1167.)

*Villatoro* held that the instruction did not impermissibly lower the standard of proof or otherwise interfere with the defendant's presumption of innocence because it "clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity."  (*Villatoro*, *supra*, 54 Cal.4th at p. at p. 1168; see also *Reliford*, *supra*, 29 Cal.4th at pp. 1012–1013 [propensity instruction under CALJIC No. 2.50.01 allowing an inference that the defendant had a disposition to commit sex crimes based on evidence he committed other sex offenses did not lower standard of proof].)  And like *Villatoro*, the trial court here instructed with CALCRIM No. 220, which reiterates that the defendant is presumed innocent and explains that only proof beyond a reasonable doubt will overcome that presumption.  (*Villatoro*, at p. 1168.)

Gomez Herrera further contends the trial court did not weigh the probative value of the evidence against its probability of undue prejudice (Evid. Code, § 352) before instructing with CALCRIM No. 1191B.  But even if the court erred, any error would have been harmless.  The victims' testimonies and video evidence were "strikingly similar in various respects."  (*Villatoro*, *supra*, 54 Cal.4th at p. 1168.)  Gomez Herrera was the Uber/Lyft driver for each of the victims or their roommate.  He committed each act when the victim was unconscious and took videos of his offenses.  "The evidence was highly probative of defendant's propensity to commit such crimes, and its value substantially outweighed any prejudice."  (*Id*. at p. 1169.)

*CALCRIM No. 1048*

Gomez Herrera contends he was deprived of due process because CALCRIM No. 1048 fails to expressly identify the specific intent necessary for a violation of section 289, subdivision (d), sexual penetration of an unconscious person.[3]  He did not object to this instruction.  Although failure to object forfeits the contention on appeal (*McCoy*, *supra*, 215 Cal.App.4th at p. 1535; § 1259), we reach this contention because Gomez Herrera contends that the instruction violated his constitutional rights and that the failure to object amounts to ineffective assistance of counsel.  We review this contention de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.)  Thus, we "view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.)

Sexual penetration of an unconscious person is a specific intent crime, requiring the prosecution to prove the defendant acted with the specific intent "to gain sexual arousal or gratification or to inflict abuse on the victim." (*McCoy*, *supra*, 215 Cal.App.4th at p. 1540.)

We conclude the jury was properly instructed.  The jury was instructed that the crime of sexual penetration of an unconscious person (§ 289, subd. (d)) as charged in count 12,

_____

[3] Gomez Herrera also challenges CALCRIM No. 1047 which instructs on sexual penetration of an intoxicated person (count 8).  Because he conceded count 8 and the only sexual penetration count he contests is count 12 (sexual penetration of an unconscious person (G.C.)), we only review CALCRIM No. 1048.

required "a specific intent or mental state." The jury was also instructed: "For you to find a person guilty of these crimes, that person must not only intentionally commit the prohibited act but must do so with a specific intent or mental state. The act and the specific intent or mental state required are explained in the instruction for that crime." The court also instructed the jury with CALCRIM No. 1048, in part, as follows: "To prove that the defendant is guilty of [sexual penetration of an unconscious person], the People must prove that [¶] . . . the defendant committed an act of sexual penetration with another person[.] [¶] . . . [¶] 'Sexual penetration' means penetration, however slight, of the genital opening of the other person *for the purpose of sexual abuse, arousal, or gratification*." (Italics added.)

CALCRIM No. 1048 accurately informed the jury that the sexual penetration offense required Gomez Herrera to act with the "purpose of sexual abuse, arousal, or gratification." And, CALCRIM No. 252 correctly informed the jury that Gomez Herrera was required to possess the specific intent described in CALCRIM No. 1048. There was no error.

*Lesser related offense instruction (count 2)*

Gomez Herrera contends the trial court erred when it refused to instruct on attempted sexual battery as a lesser related offense of burglary in count 2. We disagree.

"A trial court has a duty to instruct on general principles of law that are 'closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case.' " (*People v. Moye* (2009) 47 Cal.4th 537, 554.) Thus, a trial court must instruct a jury on any crimes that are necessarily included within a charged crime ("lesser included" offenses) if there is substantial evidence that the defendant committed the

12

lesser included offense but not the charged crime. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196.) A crime is a lesser included offense if the charged crime requires proof of every element of the lesser included crime. (*Id.* at p. 197; *People v. Licas* (2007) 41 Cal.4th 362, 366.)

This duty to instruct does not extend to a lesser *related* crime that includes an element that the charged crime does not include unless the prosecutor consents. (*People v. Birks* (1998) 19 Cal.4th 108, 136–137; *People v. Hicks* (2017) 4 Cal.5th 203, 211; *People v. Rangel* (2016) 62 Cal.4th 1192, 1230 (*Rangel*).) This distinction is grounded in the separation of powers: When the People charge a crime, that charging decision necessarily encompasses all lesser included crimes to the charged crime. Because lesser related crimes are outside this charging decision, instructing on lesser related crimes over the prosecutor's objection risks impinging on prosecutorial discretion entrusted to the executive branch. (*Birks*, at pp. 134–135; *Hicks*, at p. 211.)

Here, Gomez Herrera requested instruction on attempted sexual battery as a lesser related offense of first degree burglary. The prosecutor objected and the trial court properly refused to instruct on attempted sexual battery. "Under *Birks*, 'instruction on a lesser related offense is proper only upon the mutual assent of the parties.'" (*Rangel*, *supra*, 62 Cal.4th at p. 1230.)

Gomez Herrera acknowledges that *Birks* is binding authority, but nevertheless asks us not to apply *Birks* where the lesser related offense can constitute a defense theory. He asserts that failure to give the lesser related offense instruction under such circumstances implicates his constitutional right to present a defense. We are not persuaded.

13

Not only are we bound by *Birks* (*Auto Equity*, *supra*, 57 Cal.2d at p. 455), but Gomez Herrera is not entitled to an instruction on "lesser offenses which are not necessarily included in the charge." (*Birks*, *supra*, 19 Cal.4th at p. 136.) *Birks* does not articulate an exception or limitation. Nor does refusal to give an instruction on a lesser related offense impinge upon Gomez Herrera's constitutional right to present a case. (*People v. Taylor* (2010) 48 Cal.4th 574, 622.)

*Prosecutorial misconduct*

Gomez Herrera contends the prosecutor engaged in misconduct by allegedly (1) misstating the modified acquittal-first rule and (2) appealing to the jury's passions and prejudices. The Attorney General correctly contends forfeiture. (*People v. Powell* (2018) 6 Cal.5th 136, 171.) Had counsel objected, the trial court could have addressed any purported misconduct and admonished the jury to disregard any impropriety.

Forfeiture aside, there was no reversible error. Gomez Herrera contends the prosecutor misstated the law by telling the jury they were required to find him not guilty of the charged greater offenses before considering the lesser included offenses. But this mischaracterizes the prosecutor's statements. The prosecutor told the jury, "You heard a lot of talk about lesser crimes, and you heard a lot of about different charges that may or may not apply. . . . We were obligated to present you with the lesser charges. [¶] But there's a reason he's charged with . . . burglary, sexual battery, sexual penetration of an intoxicated person, sexual penetration of a person who was unconscious, and assault to commit sexual penetration during a residential burglary. . . . [¶] Just because you get lesser crimes doesn't mean you even have to go there unless one of you has a question as to

14

whether or not I've proven these charges. I've proven every single one of them."

In our view, the prosecutor's statement did not dictate the order in which the jury was required to consider the charged and lesser included offenses. Instead, the prosecutor asserted that they met their burden to prove the charged greater offenses and that the jury would not need to decide the lesser crimes. This is consistent with *People v. Kurtzman* (1988) 46 Cal.3d 322, 324–325.) The trial court also instructed the jury with CALCRIM No. 3517, which provides in part: "It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime." We presume the jurors understood and followed the court's instruction. (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 223; *People v. Gonzalez* (2018) 5 Cal.5th 186, 202 (*Gonzalez*).)

Gomez Herrera also contends the prosecutor engaged in misconduct by appealing to the passions and prejudices of the jury during closing argument: "The worst part of this case is not just the fact that these women were sexually assaulted, it's all the other violations. It's the fact that they were surreptitiously recorded. It's the fact that strangers from the community are forced to watch these women in their most vulnerable states. It's the fact that they don't even know what's contained on those tapes. You do. You do. You watched it."

Even if we assume these statements appealed to the jury's sympathy for the victims, there is no prejudicial error under

*Chapman*[4] or *Watson*.[5]  The prosecutor's comments were isolated and brief, and harmless given the overwhelming evidence including the videos, the victims' testimonies, and the conceded counts.  (See *People v. Young* (2019) 7 Cal.5th 905, 933.)  And, the jury was instructed to rely on the evidence, and not to rely on bias or sympathy to make their decision.  (CALCRIM No. 200.)  We presume the jury understood and followed these instructions.  (*Gonzalez*, *supra*, 5 Cal.5th at p. 202.)

*Cruel and unusual punishment*

The trial court sentenced Gomez Herrera to three consecutive life sentences on counts 1, 3, and 6 pursuant to section 220, subdivision (b).  The punishment for violating section 220, subdivision (b) is imprisonment in the state prison for life with the possibility of parole.  The court imposed mandatory consecutive sentences pursuant to section 667.6, subdivision (d) because Gomez Herrera committed assault with intent to commit a sexual offense against three separate victims.

Gomez Herrera contends this punishment is grossly disproportionate to his offenses and constitutes cruel and unusual punishment under the federal and California Constitutions.  We conclude this contention is forfeited because Gomez Herrera failed to object on this ground.  "A defendant's failure to contemporaneously object that his sentence constitutes cruel and unusual punishment forfeits the claim on appellate review."  (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247.)

---

[4] *Chapman v. California* (1967) 386 U.S. 18.

[5] *People v. Watson* (1956) 46 Cal.2d 818.

Forfeiture aside, we conclude the sentence does not constitute cruel and unusual punishment. Whether a sentence is cruel and/or unusual is a question of law we review de novo. (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496.) But we "give substantial deference both to the Legislature's broad authority to determine the parameters for the punishments for crimes, and to the trial court's discretion in imposing specific sentences." (*People v. Gomez* (2018) 30 Cal.App.5th 493, 499.)

Under the California Constitution, a sentence constitutes cruel or unusual punishment if it is " 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 478; Cal. Const., art. 1, § 17.) Deference to the Legislature "is an important element in any disproportionality analysis" (*In re Palmer* (2021) 10 Cal.5th 959, 972), and three analytical techniques aid this deferential review: "(1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Id.* at p. 973.)

Here, Gomez Herrera used his position of trust to commit sexual offenses against vulnerable victims. Gomez Herrera was a rideshare driver for companies widely used by the general public. He sexually assaulted these women in their homes while they were sleeping or unconscious and videotaped his assaults. As the trial court aptly stated, "These acts are brutal in their own way. Some or all of these women will be permanently emotionally

17

scarred to different degrees.  And that is not taken lightly by this court or by the legislature."

Gomez Herrera compares his offenses with sexual penetration of an unconscious person which results in a determinate term of three, six, or eight years in prison.  He also compares his offenses with various sexual offenses involving minors, which carry higher determinate sentences.  These comparisons are inapt because the sexual assaults here were committed against sleeping or unconscious victims in their homes.  Gomez Herrera committed burglary for the purpose of sexually assaulting his young female customers.  His crimes violated his victims' sense of security and inflicted great and lasting psychological harm.  As such, we reject Gomez Herrera's claim that his crimes are less serious than premeditated attempted murder which also carries a life sentence.

Gomez Herrera concedes there is "no directly comparable crime" in other jurisdictions.  And, our state constitution "does not require California to march in lockstep with other states in fashioning a penal code.  It does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.' " (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.)  Gomez Herrera's punishment is not so disproportionately harsh as to shock the conscience or offend notions of human dignity.  Given the deference we afford to the Legislature to determine punishment, we conclude the punishment is not cruel or unusual under our state constitution.

Nor does Gomez Herrera's sentence violate the Eighth Amendment ban on cruel and unusual punishment.  (U.S. Const., 8th Amend.)  The Eighth Amendment contains a " 'narrow proportionality principle' that 'applies to noncapital sentences.' "

18

(*Ewing v. California* (2003) 538 U.S. 11, 20 (plur. opn. of O'Connor, J.).)  "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."  (*Rummel v. Estelle* (1980) 445 U.S. 263, 272.)  "There is considerable overlap in the state and federal approaches.  'Although articulated slightly differently, . . . [t]he touchstone in each is gross disproportionality.' "  (*People v. Baker* (2018) 20 Cal.App.5th 711, 733.)

The Eighth Amendment analysis begins with a comparison between the gravity of the offense and the severity of the sentence.  (*Graham v. Florida* (2010) 560 U.S. 48, 60.)  In the " 'rare case' " this threshold comparison leads to an inference of gross disproportionality, "the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions."  (*Ibid*.)  For reasons discussed above, Gomez Herrera's case is not the "rare" case in which an inference of gross disproportionality arises.  No Eighth Amendment violation exists.

*Ineffective assistance of counsel*

Lastly, Gomez Herrera contends that his trial counsel rendered ineffective assistance if we conclude he forfeited any of his contentions.  Because we have concluded that none of his contentions would result in reversal, Gomez Herrera cannot show counsel's actions resulted in prejudice.  His ineffective assistance of counsel claim fails.  (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *In re Tellez* (2024) 17 Cal.5th 77, 88.)

19

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

Lauren Weis Birnstein, Judge

Superior Court County of Los Angeles

_____

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield, Christopher G. Sanchez and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.